UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CLEMENS FRANEK, | |
| Plaintiff, | Civil Action No. 08-Civ-0058 |
| v. | Judge Robert M. Dow, Jr. |
| WALMART STORES, INC. and TARGET CORPORATION, | *JURY DEMAND* |
| Defendants. | |

| | |
|---|---|
| JAY FRANCO & SONS, INC., | |
| Plaintiff, | Civil Action No. 08-Civ-1313 |
| v. | Judge Robert M. Dow, Jr. |
| CLEMENS FRANEK, | *JURY DEMAND* |
| Defendant. | |

## PLAINTIFF JAY FRANCO & SONS, INC.'S LOCAL RULE 56.1(a)(3) STATEMENT OF MATERIAL FACTS AS TO WHICH THERE IS NO GENUINE ISSUE

Plaintiff Jay Franco & Sons, Inc. ("Jay Franco") respectfully submits pursuant to Rule 56.1(a)(3) of the Rules of the United States District Court for the Northern District of Illinois the following Statement of Material Facts as to Which There is No Genuine Issue.  In support thereof, Jay Franco states as follows:

## MATERIAL FACTS AS TO WHICH
## THERE IS NO GENUINE ISSUE

### I.    DESCRIPTION OF THE PARTIES AND FACTS SUPPORTING VENUE AND JURISDICTION

1.      Plaintiff Jay Franco & Sons, Inc. is incorporated under the laws of New York and has its principal place of business at 295 Fifth Avenue, Suite 1712, New York, New York 10016. Jay Franco is in the business of importing, marketing, distributing, and selling bedding, bath, beach, and kitchen accessories. Jay Franco has been in business for over 60 years, and distributes its products nationally in department stores, specialty stores, and through mass merchants including Walmart Stores, Inc. ("Walmart"), and Target Corporation ("Target").    (Jay Franco & Sons, Inc.'s Complaint for Declaratory Judgment And Other Relief filed March 5, 2008 ("Complaint") at ¶2.).

2.      Defendant Clemens Franek ("Franek"), is a citizen of the United States who resides and has or has had offices at 4601 Post Road, East Greenwich, Rhode Island 02818.   Defendant Franek is currently employed as a senior executive at Conundrum Entertainment located at 325 Wilshire Boulevard, Suite 201, Santa Monica, California 90401. (Complaint ¶2).

3.      In 1985, Defendant Franek, founded CLM Design, Inc. ("CLM"), d/b/a Son International, Inc. or Sons, Inc., along with Woodrow ("Woody") Harrelson, Robert Farrelly, and Glen Grunwald. CLM was an Illinois corporation, originally located at 901 Hermosa Avenue, Hermosa Beach, California 90254 and was engaged in the business of marketing, selling, and distributing beach accessories, including round beach towels. CLM has maintained other offices, affiliates, or subsidiaries operating under the same name, located at 8217 Beverly Boulevard, Beverly Hills, California 90048 and 4601

2

Post Road, East Greenwich, Rhode Island 02818.  (Complaint ¶3, attached Exhibit F, page 70, attached Exhibit H, page 78).[1]

4.      On October 29, 1986, Defendant Franek's company, CLM, filed a Trademark Application ("Application") for a "round or circular" configuration of a beach towel (sometimes hereinafter referred to as the "Round Towel Mark").  The Application claims that CLM first used the Round Towel Mark in commence on February 14, 1986.  (Complaint ¶¶7-8, attached Exhibit H, page 78) (Exhibit 1).

5.      On August 30, 1988, the PTO registered CLM's Round Towel Mark as U.S. Trademark Registration 1,502,261 shown below.



United States Patent and Trademark Office    Reg. No. 1,502,261
                                             Registered Aug. 30, 1988

TRADEMARK
PRINCIPAL REGISTER

CLM DESIGN, INC. (ILLINOIS CORPORA-          FIRST USE 8-15-1985; IN COMMERCE
TION), DBA SONS, INC.                         2-14-1986.
SUITE NO. 1                                     THE MARK CONSISTS OF A CONFIGURA-
8217 BEVERLY BOULEVARD                        TION OF A ROUND BEACH TOWEL.
BEVERLY HILLS, CA 90048                        SEC. 2(F).

    FOR: BEACH TOWELS, IN CLASS 24 (U.S.      SER. NO. 627,482, FILED 10-29-1986.
CL. 42).
                                             JANICE O'LEAR, EXAMINING ATTORNEY

(Complaint ¶¶7-8, attached Exhibit H, page 78)(Exhibit 14).

---

[1]  Exhibits referring to letters (e.g. Exhibits A, B, C, etc.) are attached to Jay Franco's Complaint..

6.    On July 1, 1994, CLM was dissolved (as indicated by The State of Illinois' Department of Business Services Database.). (Complaint ¶36, attached Exhibit H, page 76)(Exhibit 14). U.S. Trademark Registration No. 1,502,261 indicates that on July 2, 2007, a nunc pro tunc Assignment was recorded transferring the rights of said trademark registration from the then dissolved CLM Design, Inc. to Defendant Franek. (Complaint ¶¶9 and 37, attached Exhibit H, page 77)(Exhibit 14).

7.    In 2006, Jay Franco received a letter from Franek's former legal counsel, Mr. Raymond N. Nimrod, Esq. and Ms. Elayna T. Pham, Esq. then of Jenner & Block (located at 330 N. Wabash Avenue, Chicago, Illinois 60611-7603), notifying Jay Franco of violating U.S. Trademark Registration No. 1,502,261 for its past sales of round towels to Target, Walmart, and other retailers. Settlement discussions ensued at that time between Franek and Jay Franco. However, these discussions ended sometime in the fall of 2006, and after time passed, Jay Franco believed that the matter had ended. (Complaint ¶10, attached Exhibits A through D, pages 13-32).

8.    Approximately two (2) years later, on January 3, 2008, Defendant Franek filed suit in this judicial district against Jay Franco's customers, Walmart Stores, Inc. ("Walmart") and Target Corporation ("Target"), but not against Jay Franco. Franek alleges in his Complaint against Walmart and Target that Walmart's and Target's past advertisements, sales, purchasing, and marketing of round beach towels have violated Franek's alleged trademark rights to U.S. Trademark Registration No. 1,502,261 for the Round Towel Mark. (Complaint ¶¶4-5).

9.    Plaintiff Jay Franco was the vendor to Walmart and Target for the round beach towels in question. By way of indemnification agreements with Walmart and Target, Jay Franco has agreed to hold harmless and defend Walmart and Target. (Complaint ¶6).

10.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, 1332, 1338(a) and 1338(b); 15 U.S.C. § 1121; and 28 U.S.C. § 1367. (Complaint ¶14).

11.    Venue in this district is proper pursuant to 28 U.S.C. § 1367. (Complaint ¶15).

## II.    PROSECUTION HISTORY OF FRANEK'S U.S. TRADEMARK REGISTRATION NO. 1,502,261 FOR THE ROUND TOWEL MARK

12.    On October 29, 1986, CLM, d/b/a Son International, or Sons, Inc., filed its Trademark Application ("Application") for the round or circular configuration of a beach towel. (Exhibit1). In its 1986 Application, CLM submitted a depiction of a white disc and stated that the Application sought registration for a mark "used in connection with beach towels, beach towel product configuration (specifically, the round shape of a beach towel), packaging, promotional materials, and labels." (Complaint ¶¶7-8, attached Exhibit H, page 78)(Exhibit 1).[2]

13.    In its 1986 Application, CLM submitted five (5) photographs of specimens showing the Round Towel Mark. One of these specimens was a Woodward & Lothrop Department Stores' advertisement for CLM's "Round-up new S[o]nspot beach towel" which states: "Find your spot in the sun without moving your towel around." (Emphasis added). (Exhibits 1 and 2).

14.    On March 20, 1987, the United States Patent and Trademark Office ("PTO") issued a first Office Action ("First Office Action"), in response to CLM's Application. In its First Office Action, the PTO refused registration of CLM's Application on the Principal Register under Section 2(e) of the Lanham Act, on the grounds that the requested mark constituted "a configuration of the goods" and as such, was "merely descriptive of the goods." The PTO further stated in the First Office Action that: "In the absence of evidence that ... [the mark] ha[d] a secondary meaning or ha[d] become

---

[2]    Exhibits referring to numbers (e.g. Exhibits 1, 2, 3, etc.) are attached hereto to this document.

distinctive, as applied to the goods, it ... [could] not be registered on the Principal Register." In addition, the PTO requested in its First Office Action a copy of any patent applications for the round towel configuration that had been submitted by CLM. (Exhibit 3).

15.    On September 21, 1987, CLM submitted its response ("September 1987 Response") to the 1987 First Office Action that refused registration. In CLM's response to the PTO's rejection that the Round Towel Mark constituted "a configuration of the goods" and was thus, "merely descriptive of the goods," CLM argued that the Round Towel Mark was distinctive, had acquired secondary meaning, and was therefore entitled to registration. (Exhibit 4). In support of these arguments, CLM submitted numerous exhibits (consisting of CLM's promotional advertisements, brochures, packaging materials, and labels) depicting CLM's round towel used in connection with its **SONSPOT** trademark, (Exhibits 4-5), the Declaration of Glen E. Grunwald, Vice President and Secretary of CLM (Exhibits 4 and 6), as well as nineteen (19) substantially identical declarations that had been previously prepared by CLM's legal counsel and later signed by members of the retail beach towel industry (Exhibits 4 and 7). These submitted declarations stated that the Round Towel Mark sought to be registered: had acquired the ability to distinguish CLM's brand of beach towels from other beach towels, was unique, identified CLM's product from a distance, that no competitive product was similarly configured, and that any product so configured would come from the same source and be of equal quality. (Exhibits 4 and 7).

16.    In response to the PTO's request in its First Office Action that CLM submit a copy of any of its patent applications for the round towel configuration, CLM submitted in its September 1987 Response a copy of a design patent application entitled "Beach Towel for Outdoor Use," invented by Defendant Clemens E. Franek. (Exhibits 4 and 8). This submitted design patent application entitled

"Beach Towel for Outdoor Use" consisted of one (1) page containing the specification and claim, one (1) page of drawings (including three figures), and two (2) pages containing the combined declaration and power of attorney. (Exhibit 8).

17.    CLM's design patent application entitled "Beach Towel for Outdoor Use" was prepared by Mr. Raymond N. Nimrod, Esq. then of Neuman, Williams, Anderson & Olson (located then at 77 West Washington Street, Chicago, Illinois 60602). (Exhibits 8). In addition, as previously stated, in 2006, the same Mr. Nimrod, of Jenner & Block, sent Jay Franco a letter on behalf of Defendant Franek that first notified Jay Franco of violating U.S. Trademark Registration No. 1,502,261 for its past sales of round towels to Target, Walmart, and other retailers. (Complaint ¶10, attached Exhibits A through D, pages 13-32) (Exhibit 8).

18.    CLM's design patent application entitled "Beach Towel for Outdoor Use" claims the ornamental design for a beach towel for outdoor use. (Exhibit 8). It describes and depicts a beach towel with a round or circular configuration comprised of a fabric that features a uniform "weaved pattern" across the top and bottom of the round towel (as shown in Figure 1). (Exhibit 8). In addition, a stitched-on border is depicted that is shown to be attached around the circumferential edge of the round towel's "weaved" fabric (as shown in Figure 3). (Exhibit 8).

19.    In response to the PTO's request in its First Office Action that CLM submit a copy of any of submitted patent applications for the round towel configuration, CLM did not submit any citation of art prior to the filing date of its design patent application entitled "Beach Towel for Outdoor Use." (Exhibits 4 and 8). In response to the PTO's request in its First Office Action, CLM did not disclose to the PTO any active or expired, utility or design patents that were published or granted prior to the filing date of its design patent application which disclosed, claimed, or depicted round or circular

towel configurations. (Exhibits 4 and 8). In addition, CLM did not disclose to the PTO any active or expired, utility or design patents that were published or issued prior to the October 29, 1986 filing date of CLM's Trademark Application which disclosed, claimed, or depicted round or circular towel configurations. (Exhibits 4 and 8).

20.     On October 16, 1987, the PTO issued a Priority Office Action ("Priority Office Action"), in response to CLM's September 1987 Response to the PTO's First Office Action. In its Priority Office Action, the PTO requested further evidence proving secondary meaning of CLM's Round Towel Mark including: (1) a videotape of the television commercials that promoted CLM's Round Towel Mark, and (2) sales and advertising figures for CLM's round beach towel. (Exhibit 9).

21.     On December 16, 1987, CLM submitted its response ("1987 December Response") to the PTO's Priority Office Action. In CLM's 1987 December Response to the PTO's Priority Office Action, CLM provided the PTO with a copy of the requested videotape, as well as, information concerning its advertising and promotional expenditures, extent of television and newspaper promotions, and sales figures for its round beach towels supported by a submitted Declaration of Clemens Franek. In the same 1987 December Response, CLM once again argued that its Round Towel Mark had acquired secondary meaning and referred the PTO to its remarks, exhibits, and nineteen (19) declarations that had been previously submitted in CLM's September 1987 Response to the PTO's First Office Action. (Exhibit 10).

22.     On January 29, 1988, the PTO withdrew its March 20, 1987 rejection of CLM's Trademark Application because (according to the PTO) CLM had submitted sufficient evidence of distinctiveness under Section 2(f) of the Lanham Act to overcome the PTO's previous Section 2(e) rejection based

on the "configuration" of the Round Towel Mark being "merely descriptive of the goods." (Exhibit 11).

23.     On April 5, 1988, the PTO approved and published CLM's Round Towel Mark in the Official Gazette. (Exhibit 12).

24.     On May 5, 1988, Spring Industries, Inc., a Delaware corporation, with offices at 205 North White Street, Fort Mill, South Carolina, requested a thirty-day extension of time to file an opposition to oppose the federal registration of CLM's Round Towel Mark. However, on May 24, 1988, Springs Industries withdrew their extension of time to oppose the federal registration of CLM's Round Towel Mark. (Exhibit 13).

25.     On August 30, 1988, the PTO registered CLM's Round Towel Mark as a federal trademark – U.S. Registration No. 1,502,261. (Complaint ¶¶7-8, attached Exhibit H, page 78)(Exhibit 14).

## III.     UTILITY PATENTS NOT CONSIDERED BY THE PTO DURING THE PROSECUTION OF FRANEK'S U.S. TRADEMARK REGISTRATION NO. 1,502,261 DISCLOSE, CLAIM, AND ILLUSTRATE THE FUNCTIONAL AND UTILITARIAN ADVANTAGES OF THE CIRCULAR CONFIGURATION CLAIMED IN FRANEK'S U.S. TRADEMARK REGISTRATION NO. 1,502,261 FOR THE ROUND TOWEL MARK.

### A.     Expired U.S. Utility Patent No. 2,803,845 Entitled "Circular Towel"

26.     U.S. Patent No. 2,803,845 ("the expired '845 utility patent") entitled "Circular Towel" to Marjorie P. Bradford was filed on June 14, 1954, was granted on August 27, 1957, and expired on August 27, 1974. (Complaint, attached Exhibit E, pages 48-49)(Exhibit 15)(Declaration of Robert J. Anders (hereinafter "Anders Dec.") ¶24).

27.1     The '845 utility patent entitled "Cicular Towel" was granted approximately twenty-nine (29) years before Franek filed its trademark Application for the Round Towel Mark or even first used the Round Towel Mark in commerce. In addition, the '845 utility patent entitled "Cicular Towel"

**expired** approximately twelve (12) years before CLM filed its trademark Application for the Round Towel Mark or even first used the Round Towel Mark in commerce. Thus, the '845 expired utility patent entitled "Circular Towel" went into the **public domain** twelve (12) years before Franek later registered the round shape of beach towel as a trademark in U.S. Trademark Registration No. 1,502,261. (Complaint ¶¶7-8, attached Exhibit E, pages 48-49 and Exhibit H, page 78)(Exhibits 14 and 15).

27.2    The '845 expired utility patent entitled "Circular Towel"discloses, claims, and shows the same circular configuration of a round towel depicted in Franek's trademark registration. (Complaint ¶¶7-8, attached Exhibit E, pages 48-49 and Exhibit H, page 78)(Exhibits 14 and 15)(Anders Dec. ¶25).

28.    The specification of the expired '845 utility patent entitled "Circular Towel" states that:

> [A]n object of this invention is to provide a towel which is constructed in circular form and includes means for suspending the same from a towel rack.

(Complaint, attached Exhibit E, pages 48-49, col. 1, lines 16-18)(Exhibit 15, col. 1, lines 16-18) (Anders Dec. ¶26)(emphasis added).

29.    The claim in the expired '845 utility patent entitled "Circular Towel" recites and claims the "circular body" of a towel which functions integrally and cooperatively in combination with other elements of the claimed invention. The claimed circular shape is set forth in the claim:

> What is claimed is:
> In combination, a towel and suspension means therefore compromising, a circular fabric body, a reinforced disc for said [circular fabric] body, a pair of crossed straps positioned on said disc with the ends of said straps extending under the edge of said disc, stitching extending through said [circular fabric] body, said disc and said straps securing said [circular fabric] body, said disc and said straps together, with said disc disposed centrally of said [circular fabric] body, and adjustable elastic suspension member extending under said crossed straps for suspending said [circular fabric] body, and means joining the opposite ends of said elastic suspension members to form a closed loop.

10

(Complaint, attached Exhibit E, pages 48-49, col. 2, lines 31-43)(Exhibit 15, col. 2, lines 31-43)(Anders Dec. ¶27)(emphasis added).

30.     The expired '845 utility patent entitled "Circular Towel" does not claim or address a towel or fabric having a shape other than circular, nor is there any mention, suggestion, or teaching of using a towel having any shape other than circular. (Complaint, attached Exhibit E, pages 48-49)(Exhibit 15)(Anders Dec. ¶27).

31.     Figure 1 of the expired '845 utility patent entitled "Circular Towel" shows the same circular configuration as the round towel which went into the public domain <u>before</u> Franek later registered the Round Towel Mark as a trademark in U.S. Trademark Registration No. 1,502,261. Shown below on the left is Franek's registered trademark for the round beach towel in U.S. Trademark Registration No. 1,502,261 and on the right is the circular towel shown in Figure 1 of the expired '845 utility patent entitled "Circular Towel":



(Complaint ¶¶7-8, attached Exhibit E, pages 48-49 and Exhibit H, page 78)(Exhibits 14 and 15)

(Anders Dec. ¶28).

32.    The expired '845 utility patent entitled "Circular Towel" also explicitly discloses the <u>functional</u> advantages of the circular configuration of the claimed circular towel.  As stated in the '845 utility patent:

> The circular form of the towel body 10 provided a relatively large area of toweling for use by small children and by suspending the body 10 with an elastic strap or band the tapes 13 and 14 will not be placed under undue tearing strain if the [circular] towel is pulled laterally or downwardly with respect to rack bar 16.

(Complaint, attached Exhibit E, pages 48-49,col. 2, lines 22-27 )(Exhibit 15, col. 2, lines 22-27 ) (Anders Dec. ¶29)(emphasis added).

### B.    U.S. Utility Patent No. 4,794,029 Entitled "Towel that Converts into a Bag"

33.    U.S. Utility Patent No. 4,794,029 ("the '029 utility patent") to Lynne H. Tennant, et al. entitled "Towel that Converts into a Bag" was filed on February 24, 1987 and was granted on December 27, 1988.  (Complaint, attached Exhibit E, pages 40-47)(Exhibit 16). The '029 discloses, claims, and shows the same circular configuration of a round towel that Franek registered as a trademark in U.S. Trademark Registration No. 1,502,261. (Complaint ¶¶7-8, attached Exhibit E, pages 40-47 and Exhibit H, page 78)(Exhibits 14 and 16)(Anders Dec. ¶¶31-32).

34.    The specification of the '029 utility patent discloses the functionality of the circular configuration of the towel:

> It is an object of this invention to provide a circular section of woven terry fabric that when used as a towel for sunbathing requires no repositioning toward the changing angle of the sun.

(Complaint, attached Exhibit E, pages 40-47, col. 1, lines 1-8 )(Exhibit 16, col. 1, lines 1-8 ) (Anders Dec. ¶33)(emphasis added).

The <u>circular shape of the towel allows for the repositioning of the human body toward the changing angle of the sun while the towel remains stationary, thereby eliminating the need for continual repositioning of the towel</u> as with the conventional rectangular sunbather towel.

(Complaint, attached Exhibit E, pages 40-47, col. 1, lines 58-63)(Exhibit 16, col. 1, lines 58-63 )

(Anders Dec. ¶33)(emphasis added).

35.    Claim 2 of the '029 utility patent also claims the <u>functional</u> advantages of how the circular

configuration of the towel cooperatively functions with the sun.  Claim 2 of the '029 utility patent

reads as follows:

> 2.  A towel bag construction as set forth in claim 1 wherein said <u>towel is circular in shape, whereby a user while sunbathing may reposition his or her body towards the changing angle of the sun while the towel remains stationary</u>.

(Complaint, attached Exhibit E, pages 40-47, col. 3, lines 5-9 )(Exhibit 16, col. 3, lines 5-9) (Anders

Dec. ¶34)(emphasis added).

36.    Figure 1 of the '029 utility patent shows the same circular towel configuration as the round

towel which Franek registered as a trademark in U.S. Trademark Registration No. 1,502,261. Shown

below on the left is Franek's registered trademark for the round beach towel in U.S. Trademark

Registration No. 1,502,261 and on the right is the circular towel shown in figure 1 of the '029 utility

patent:




(Complaint, attached Exhibit E, pages 40-47)(Exhibit 16)(Anders Dec. ¶35).

### C.    French Utility Patent No. 2,399,229

37.    French Utility Patent No. 2,399,229 ("the '229 French Utility Patent") to Devalois, et al. was granted on April 6, 1979.  (Complaint, attached Exhibit E, pages 56-58)(Exhibit 17). That is, the '229 French Utility Patent was granted approximately seven (7) years before Franek filed its trademark Application for the Round Towel Mark or even before Franek first used the Round Towel Mark in commerce.  The '229 French utility patent discloses and shows the functional aspects of the same circular configuration of the round towel that Franek registered as a trademark in U.S. Trademark Registration No. 1,502,261. (Complaint ¶¶7-8, attached Exhibit E, pages 56-58 and Exhibit H, page 78)(Exhibits 14 and 17)(Anders Dec. ¶¶37-38).

38.    The '229 French utility patent discloses the <u>functionality</u> of the circular configuration of the claimed round towel:

> The towel or cloth suspended from a hook is <u>designed to have the shortest possible hanging length, and is therefore preferably circular.</u>

(Complaint, attached Exhibit E, page 56)(Exhibit 17)(Anders Dec. ¶39).

39.    Figure 1 of the '229 French utility patent illustrates the same circular configuration for a round towel which Franek later registered as U.S. Trademark Registration No. 1,502,261.  Shown below on the left is Franek's U.S. Trademark Registration No. 1,502,261 for a round beach towel and on the right is Figure 1 of the '229 French utility patent:



(Complaint ¶¶7-8, attached Exhibit E, page 58 and Exhibit H, page 78)(Exhibits 14 and 17)(Anders Dec. ¶40).

### D.   U.S. Utility Patent No. 4,991,978 Entitled "Towel Bag Combination Apparatus"

40.   U.S. Utility Patent No. 4,991,978 ("the '978 utility patent") to Michael J. Ostrowski entitled "Towel Bag Combination Apparatus" was filed on January 16, 1990 and was granted on February 12, 1991.   (Complaint, attached Exhibit E, pages 34-47)(Exhibit 18). The '978 utility patent discloses, claims, and shows the same circular configuration of a round beach towel that Franek registered as the trademark in U.S. Trademark Registration No. 1,502,261. (Complaint ¶¶7-8, attached Exhibit E, pages 34-47 and Exhibit H, page 78)(Exhibits 14 and 18)(Anders Dec. ¶¶42-43).

41.   The functionality of the circular configured round towel is described in the specification of the '978 utility patent at column 1, lines 37-50, and at column 2, lines 45-49 as follows:

15

The invention is directed to a towel-bag apparatus which is adapted to move easily between an open position wherein a generally <u>circular fabric towel element provides a towel for drying purposes or to be laid on the beach for sunning purposes</u> and to a closed or partially closed position with the employment of a draw cord on the generally <u>circular towel element</u> to provide an enclosed bag, and further with the draw cord also providing a carrying strap for the bag. In particular, the towel bag apparatus of the invention employs the generally <u>circular fabric towel element</u>, such as a terrycloth, having a reinforced peripheral web and a plurality of draw holes, such as of metal and plastic grommets, in the reinforced web.

(Complaint, attached Exhibit E, pages 34-47, col. 1, lines 37-50)(Exhibit 18, col. 1, lines 37-50 ).

(Anders Dec. ¶44)(emphasis added).

The drawings illustrate a towel-bag apparatus 10 of the invention which comprises a generally <u>circular terrycloth towel fabric</u> 12 having a diameter of 4 to 6 feet and a generally reinforced fabric or canvas peripheral 1" to 1 ½ webbing 14.

(Complaint, attached Exhibit E, pages 34-47, col. 2, lines 45-49 )(Exhibit 18, col. 2, lines 45-49)

(Anders Dec. ¶44)(emphasis added).

42.    The circular configuration of a round towel is claimed in claims 1, 2, and 7 of the '978 utility

patent as follows:

1. A towel-bag apparatus which is adapted to move between an open and closed position and which in the open position provides a towel suitable for drying and beach purposes, and in the closed position provides an enclosed bag with a carrying strap, and which towel-bag apparatus compromises in combination:

a) a generally <u>circular, fabric towel element</u> having a reinforced peripheral web and a plurality of holes in the web and having a top surface and a bottom surface, the bottom surface having a generally centrally reinforced section;
b) a loop means generally centrally secured to the reinforced section;
c) a ring means secured to the reinforced peripheral web; and
d) a draw cord means having a one and an other end, the draw cord passing through the holes in the reinforced web of the towel element, so as to permit the <u>circular towel element</u> to move between an open position for towel or beach with the draw cord in a relaxed, extended position use and a closed position for bag use with the draw cord in a drawn position, the draw cord means including a clip-type closure means at the one end and the other end so as to permit the said clip-type enclosure means to engage the loop means or the ring in the closed position to form a carrying strap for the towel-bag apparatus.

16

2.  The towel-bag apparatus of claim 1 wherein the generally <u>circular towel element</u> has a diameter of from four to six feet and wherein the <u>reinforced section is generally circular</u> and has a diameter of six to eighteen inches.

7.  A towel-bag apparatus adapted to be placed in an open position which provides a towel suitable for beach or drying purposes and in the closed position provides an enclosed bag with a carrying strap, and which towel-bag apparatus compromises in combination:

    a) a generally <u>circular, terrycloth towel element</u> having a diameter of about 4 to 6 feet and having a reinforced peripheral web edge and plurality of holes in the web and having a top surface and a bottom surface, the bottom surface having a generally <u>circular reinforced section</u> of a non-terrycloth-type material and having a cloth loop centrally secured to the reinforced section and a ring secured to the reinforced peripheral web; and
    b) an elastic-type draw cord means having a one and the other end and passing through the holes in the web in an alternating fashion so as to permit the circular towel element to move between the open position for towel-beach use and a closed position for bag use, the draw cord means including a spring loaded clip at the one and the other end so as to permit the draw cord means to pass through the loop and the spring loaded clip to engage the ring in the closed position to form a carrying strap for the towel-bag apparatus in the closed position.

(Complaint, attached Exhibit E, pages 34-47, col. 3, lines 21-46; col. 4, line 5-7 and lines 21-45)

(Exhibit 18, col. 3, lines 21-46; col. 4, line 5-7 and lines 21-45)(Anders Dec. ¶45)(emphasis added).

43.    Figure 2 of the '978 utility patent illustrates the same circular configuration for a round towel which Franek registered as U.S. Trademark Registration No. 1,502,261. Shown below on the left is Franek's U.S. Trademark Registration No. 1,502,261 for a round beach towel and on the right is Figure 2 of the '978 utility patent:



FIG. 2

(Complaint ¶¶7-8, attached Exhibit E, page 36 and Exhibit H, page 78)(Exhibits 14 and 18)(Anders Dec. ¶46).

**E.   U.S. Utility Patent No. 3,660,861 Entitled "Combination Round Towel and Holder"**

44.    U.S. Utility Patent No. 3,660,861 ("the '861 utility patent") to Edward N. Delmonico entitled "Combination Round Towel and Holder" was filed on January 6, 1970 and was granted on May 9, 1972. (Exhibit 19). That is, the '861 Utility Patent entitled "Combination Round Towel and Holder" was granted approximately fourteen (14) years before Franek filed its trademark Application for the Round Towel Mark or even first used the Round Towel Mark in commerce. (Complaint ¶¶7-8, attached Exhibit H, page 78)(Exhibits 14 and 19)(Anders Dec. ¶48).

45.    The '861 utility patent entitled "Combination Round Towel and Holder" discloses and claims the same circular configuration of a round towel that Franek registered as a trademark in U.S.

Trademark Registration No. 1,502,261.  (Complaint ¶¶7-8, attached Exhibit H, page 78)(Exhibits

14 and 19)(Anders Dec. ¶49).

46.    The <u>functionality</u> of the circular configured round towel is described in the specification of

the '861 utility patent entitled "Combination Round Towel and Holder" at column 1, lines 44-47,

and at column 2, lines 47-64 as follows:

> In accordance with the present invention, there is provided, in combination, a <u>towel</u>
> <u>substantially circular in outline configuration</u> detachably anchored to a support adjacent the
> towel's geometric center.

(Exhibit 19, col. 1, lines 44-47 )(Anders Dec. ¶50)(emphasis added).

47.    The circular configuration of a round towel is also claimed in claim 1 of the '861 utility

patent entitled "Combination Round Towel and Holder" as follows:

> 1. In combination:
>
> a. a hanger including a first portion for anchoring the same to a support and a second
> portion detachably connectable to an article and including a conically shaped member
> with an undulating outer surface, said undulations being transverse to the longitudinal
> axis of said member, facilitating forming folds in a sheet of material suspended
> therefrom; and
> b. a <u>circular towel</u> detachably connected to said second portion of said hanger.

(Exhibit 19, col. 3, lines 20-21; col. 4, lines 1-20)(Anders Dec. ¶51)(emphasis added).

48.    The '861 utility patent entitled "Combination Round Towel and Holder" explicitly discloses

the <u>functional</u> advantages of the circular configuration of the claimed circular towel.  As stated in

the '861 utility patent:

> ... the <u>towel 60 is circular in outline configuration as illustrated in FIG. 4 and because of this</u>
> <u>shape the inner surface of the towel does not become exposed when the towel is suspended</u>
> <u>from its geometric center. This permits having a towel which is decorative on one surface</u>
> <u>only without detracting from the appearance when suspended from a hanger in a washroom.</u>
> The circular towel, accordingly, is a decorative item having a neat appearance. Further to
> providing something which is pleasing in appearance, <u>the circular towel has the advantage</u>
> <u>of being able to be suspended from a minor area portion such that it can remain attached to</u>

a hanger leaving the major portion of the towel area for use in drying hands. This is diagrammatically illustrated in FIG. 3 wherein it will be readily apparent the area of towel above a plane A--A in FIG. 3 is minor compared to the area below. It is the area below which is usable when the towel is suspended from the hanger.

(Exhibit 19, col. 1, lines 44-47)(Anders Dec. ¶52)(emphasis added).

## IV.  WHEN U.S. UTILITY PATENT NO. 2,803,845 ENTITLED "CIRCULAR TOWEL" EXPIRED, THE CIRCULAR TOWEL CONFIGURATION CLAIMED, DISCLOSED, AND SHOWN IN THIS PATENT WENT INTO THE PUBLIC DOMAIN APPROXIMATELY TWELVE YEARS BEFORE FRANEK SOUGHT TO REGISTER THE SAME CIRCULAR TOWEL CONFIGURATION AS A TRADEMARK IN U.S. TRADEMARK REGISTRATION NO. 1,502,261.

49.    U.S. Patent No. 2,803,845 ("the expired `845 utility patent") entitled "Circular Towel" to Marjorie P. Bradford was filed on June 14, 1954, was granted on August 27, 1957, and expired seventeen (17) years later on August 27, 1974. (Complaint, attached Exhibit E, pages 48-49)(Exhibit 15).

50.    As described above in paragraphs 26 through 32, the expired `845 utility patent entitled "Circular Towel"discloses, claims, and shows the same circular configuration of a round towel that Franek later registered as a trademark in U.S. Trademark Registration No. 1,502,261. (Complaint ¶¶7-8, attached Exhibit E, pages 48-49 and Exhibit H, page 78)(Exhibits 14 and 15).

51.    When the `845 utility patent entitled "Circular Towel" expired (seventeen (17) years after its issuance) on August 27, 1974, the patent monopoly over the circular towel that was claimed and which had been granted to the patentee of the `845 utility patent by the U.S. Government, ended. Accordingly, when the `845 utility patent entitled "Circular Towel" expired, the circular towel configuration claimed, disclosed, and shown in this patent went into the public domain and was free to be practiced by any member of the public, including Jay Franco. (Complaint, attached Exhibit E, pages 48-49)(Exhibit 15).

52.    Since the '845 utility patent (entitled "Circular Towel") expired, and the circular towel configuration claimed, disclosed, and shown in this patent went into the public domain, many third party vendors have sold and continue to sell round or circular shaped beach towels without any interference or lawsuits for enforcement by Defendant Franek. (Complaint, attached Exhibit E, pages 48-49)(Exhibits 15 and 20).

53.    On October 29, 1986, approximately twelve (12) years after the expiration of the '845 utility patent entitled "Circular Towel," Franek sought federal trademark protection to register the same circular towel configuration as a trademark that had been previously patented as **functional** in the then expired '845 utility patent to Bradford. That is, twelve (12) years after the expiration of the '845 utility patent entitled "Circular Towel" which claimed, disclosed, and showed, the functional aspects of a circular towel configuration, Franek sought to register the same circular towel configuration as a trademark. (Complaint ¶¶7-8, attached Exhibit E, pages 48-49 and Exhibit H, page 78)(Exhibits 14 and 15).

**V.    FRANEK'S OWN ADVERTISEMENTS TOUT THE UTILITARIAN AND FUNCTIONAL ADVANTAGES OF THE CIRCULAR CONFIGURATION CLAIMED IN FRANEK'S U.S. TRADEMARK REGISTRATION NO. 1,502,261 FOR THE ROUND TOWEL MARK.**

54.    Franek's own advertisements tout the same utilitarian and functional advantage of the circular configuration for the Round Towel Mark as that claimed and disclosed in the '029 utility patent to Lynne H. Tennant, et al. – permitting sunbathers to simply reposition their bodies on the round towel in order to get direct tanning exposure from the sun (as its position in the sky changes throughout the course of the day) without having to reposition the towel. (Complaint, attached Exhibit E, pages 40-47, col. 3, lines 5-9; attached Exhibit F, pages 60-78)(Exhibit 16, col. 3, lines 5-9; Exhibits 2 and 21-25)(Anders Dec. ¶54)(emphasis added).

55.    In 1986, when CLM filed the Application that later became U.S. Trademark Registration No 1,502,261, it submitted a Woodward & Lothrop Department Stores' advertisement for CLM's "Round-up new S[o]nspot beach towel" as a specimen showing actual use of the Round Towel Mark in the marketplace. (Exhibits 1 and 2).

56.    The Woodward & Lothrop Department Stores' advertisement for CLM's "Round-up new S[o]nspot beach towel," states that the round shape of the "Sonspot" beach towel <u>functionally</u> permits sunbathers to simply reposition their bodies on the round towel in order to get direct tanning exposure from the sun (as its position in the sky changes throughout the course of the day) without having to reposition the towel: "<u>Find your spot in the sun without moving your towel around.</u>" (Exhibit 2)(Anders Dec. ¶55)(emphasis added).

57.    CLM's Son International advertisement of the "Sonspot" round beach towel touts the utility and functionality of the round shape of the round beach towel that CLM registered as a trademark in U.S. Trademark Registration No 1,502,261. (Complaint ¶¶7-8, attached Exhibit H, page 78 and Exhibit F, page 60)(Exhibits 14 and 21)(Anders Dec. ¶56).

58.    CLM's Son International advertisement states that the round shape of the "Sonspot" beach towel <u>functionally</u> overcomes the problem faced by beach goers using conventional beach towels wherein they had to previously rotate their towel every few hours to get direct tanning exposure from the sun as the sun's position in the sky changed throughout the course of the day.  With the "Sonspot" round beach towel, sunbathers could now simply reposition their bodies on the round towel as the round towel remains in a stationary, fixed position:

### <u>NOW WHEN THE SUN MOVES, YOUR TOWEL DOESN'T HAVE TO</u>

* The round shape eliminates the need to constantly get up and move your towel as the sun moves across the sky.  Instead merely reposition yourself.

(Complaint, attached Exhibit F, page 60)(Exhibits 21)(Anders Dec. ¶57)(emphasis added).

59.    Springmaid's advertisement of CLM's "Sonspot" round beach towel also touts the utility and functionality of the round shape of the round beach towel that Franek registered as a trademark in U.S. Trademark registration No. 1,502,261. (Complaint ¶¶7-8, attached Exhibit H, page 78 and Exhibit F, pages 61-63)(Exhibits 14 and 22)(Anders Dec. ¶58).

60.    Springmaid's advertisement of CLM's "Sonspot" round beach towel states that the round shape of the "Sonspot" beach towel <u>functionally</u> permits sunbathers to simply reposition their bodies on the round towel in order to get direct tanning exposure from the sun (as its position in the sky changes throughout the course of the day) without having to reposition the towel:

> Introducing Sonspot™ from Springmaid, the great new beach towel line that's going to have everybody going around in circles!  <u>These unique round towels stay put on the beach while sun-worshippers rotate to follow the sun.</u>

> <u>The round shape of a towel is a trademark</u> which identifies it as a quality product of Son International.

(Complaint, attached Exhibit F, pages 61-63)(Exhibit 22)(Anders Dec. ¶59)(emphasis added).

61.    CLM's Son International "Huge Round Beach Towel" advertisements for the "Sonspot" round beach towel also tout the utility and functionality of the round shape of the round beach towel that CLM registered as a trademark in U.S. Trademark Registration No. 1,502,261. (Complaint ¶¶7-8, attached Exhibit H, page 78 and Exhibit F, pages 64-67)(Exhibits 14 and 23)(Anders Dec. ¶60).

62.    CLM's Son International "Huge Round Beach Towel" advertisement for the "Sonspot" round beach towel states that the round shape of the "Sonspot" beach towel <u>functionally</u> permits sunbathers to simply reposition their bodies on the round towel in order to get direct tanning exposure from the sun (as its position in the sky changes throughout the course of the day) without having to reposition the towel:

**Now when the sun moves, your towel doesn't have to.**

One for lying, one for drying!  Bound to be round!  Don't be square!

The <u>round shape</u> of the Sonspot® is a trademark of Son International.

(Complaint, attached Exhibit F, pages 64-67)(Exhibit 23)(Anders Dec. ¶61)(emphasis added).

63.     In newspaper articles advertising CLM's Son International "Sonspot" round beach towel, CLM touted the utility and functionality of the round shape of the round beach towel that CLM registered as a trademark in U.S. Trademark Registration No. 1,502,261. (Complaint ¶¶7-8, attached Exhibit H, page 78 and Exhibit F, page 69)(Exhibits 14 and 22)(Anders Dec. ¶62).

64.     Newspaper articles advertising CLM's Son International "Sonspot" round beach towel state that the round shape of the "Sonspot" beach towel <u>functionally</u> permits sunbathers to simply reposition their bodies on the round towel in order to get direct tanning exposure from the sun (as its position in the sky changes throughout the course of the day) without having to reposition the towel:

> What's this?  A Sonspot and no, it isn't a typo.  It's the world's first <u>*round* beach towel</u>, designed by L.A.'s Son International, whipped up by Springmaid.  <u>Why round?</u>  <u>Aren't *you* tired of turning your towel to face the sun?</u>  <u>Now you needn't.</u>

(Complaint, attached Exhibit F, page 69)(Exhibit 24)(Anders Dec. ¶63)(emphasis added).

65.     As the foregoing advertisements show, CLM always used the trademark "Sonspot" in conjunction with their Round Towel Mark. (Complaint, attached Exhibit F, pages 60-78)(Exhibits 2, 5, and 21-24).

66.     Mr. Woody Harrelson, one of the founders of Son International, admitted in various printed articles that the round shape of the **SONSPOT** beach towel has utilitarian and <u>functional</u> advantages. (Complaint, attached Exhibit F, pages 68, 70-71)(Exhibit 25).

67.    As stated by Mr. Woody Harrelson, in various printed articles, the round shape of the "Sonspot" beach towel permits sunbathers to simply reposition their bodies on the round towel in order to get direct tanning exposure from the sun (as its position in the sky changes throughout the course of the day) without having to reposition the towel:

> Son International was founded in 1985 and besides [Woody] Harrelson, includes Clemens Franek, president of the firm, Robert Farrelly, vice president of sales, and Glen Grunwald, chief legal and financial advisor (who also was former captain of the Indians University 1981 national championship basketball team).
>
> Woody Harrelson... is the vice president in charge of publicity and marketing for Son International, a beach accessories company based in Hermosa Beach, California. Son International introduced the first round beach towel, Sonspot, last summer and received an overwhelming response from consumers. Retail sales for the first year totaled over $1 million. The purpose of a round beach towel is simple: "Now when the sun moves, your towel doesn't have to."

(Complaint, attached Exhibit F, pages 68 and 70-71)(Exhibit 25)(emphasis added).

> ...Woody Harrelson... is co-owner and a spokesperson for Son International. This California company manufactures giant – six feet in diameter – round beach towels. Why is round better than square? Why is this company encouraging people to lie out in the sun and roast themselves? We believe we are performing a public service by posing these questions. Think about it. These towels cost between $40 and $50. We say get your fill of the beach while sitting under a nice shade tree.

(Complaint, attached Exhibit F, pages 68 and 70-71)(Exhibit 25)(emphasis added).


## VI.    FRANEK HAS ADMITTED THAT THE CIRCULAR CONFIGURATION CLAIMED IN FRANEK'S U.S. TRADEMARK REGISTRATION NO. 1,502,261 FOR THE ROUND TOWEL MARK HAS UTILITARIAN AND FUNCTIONAL ADVANTAGES.

68.    Franek has himself admitted that the round shape of his round beach towel has utilitarian and functional advantages. (Complaint, attached Exhibit G, pages 73-74)(Exhibit 26).

69.    On February 19, 1989, Ms. Gloria L. Bowen visited Defendant Clemens Franek at CLM

Design, Inc. in Los Angeles, California.  Ms. Bowen attested that at that time, Defendant Franek

stated:

>    ...the old fashion way of getting up and moving and turning a rectangular towel was no
>    longer necessary.  With the <u>round towel</u>, as stated by Mr. Franek, a <u>person need only rotate
>    the body without moving the towel</u>.

(Complaint, attached Exhibit G, pages 73-74)(Exhibit 26)(emphasis added).

70.    Franek's own admissions tout the same utilitarian and functional advantage of the circular

configuration for the Round Towel Mark as that claimed and disclosed in the '029 utility patent to

Lynne H. Tennant, et al., and in Franek's former company's various advertisements – permitting

sunbathers to simply reposition their bodies on the round towel in order to get direct tanning

exposure from the sun (as its position in the sky changes throughout the course of the day) without

having to reposition the towel.  (Complaint, attached Exhibit E, pages 40-47, col. 3, lines 5-9;

attached Exhibit G, pages 73-74)(Exhibit 16, col. 3, lines 5-9; Exhibit 26).


Dated: May 16, 2008                                 Respectfully submitted,


                                                    By: _____
                                                    Ezra Sutton
                                                    EZRA SUTTON, P.A.
                                                    900 Route 9, Suite 201
                                                    Woodbridge, New Jersey 07095
                                                    (732) 634-3520 - Office
                                                    (732) 634-3511 - Fax

*On the Local*
*Rule 56.1(a)(3)*                                   Attorney for Plaintiff
*Statement:*                                        Jay Franco & Sons, Inc.
Ezra Sutton
Anthony M. Morano