UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| JAY FRANCO & SONS, Inc., | ) |
| | ) |
| Plaintiff, | ) Civil Action No. 1:08-cv-01313 |
| | ) Consolidated with No. 1:08-cv-0058 |
| v. | ) |
| | ) Judge Dow |
| CLEMENS FRANEK, | ) |
| | ) JURY DEMAND |
| Defendant. | ) |

**DEFENDANT'S MEMORANDUM OF LAW IN RESPONSE TO JAY FRANCO & SONS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

Now comes the Defendant/Counter-Plaintiff, Clemens E. Franek, through his attorneys, Orum & Roth LLC and for his Memorandum of Law in Response to Jay Franco & Sons, Inc.'s Motion for Partial Summary Judgment states:

**I.
INTRODUCTION**

Defendant is the owner of a registered trademark on round beach towels. The mark has been in continuous use in interstate commerce since 1986. J. Franco & Sons ("Franco") is accused of infringing the Defendant's trademark by selling round beach towels to its customers such as Wal-Mart and Target. Franco has filed a motion for partial summary judgment arguing that Defendant's fanciful and ornamental design for a round beach towel is purely functional, and therefore is not entitled to trademark protection.

Franco's Motion for Partial Summary Judgment claims that Defendant's round beach towel is merely functional because the existence of a circular towel has been mentioned in several utility patents not owned by Defendant, and because a large round beach towel allows

1

the person laying on the beach towel to avoid moving the beach towel as the sun moves across the sky.

As this Response will establish, Defendant's round beach towels do not practice the claims of the cited patents. Under United States Supreme Court precedent, then, the patents do not even considered as evidence for cancellation of the trademark. Further, courts interpreting the functionality doctrine recognize that of course all products, even a product that is the subject of product design trademark, maintain some purpose or function. The fact that a product serves a purpose is not enough to declare the product "functional" in order to cancel a trademark. Moreover, this Response Brief will establish that the Defendant's unique shape of its round beach towel is an arbitrary, fanciful and ornamental design chosen in order to be distinctive when compared to the myriad of other available shapes for beach towels. Further, contrary to Franco's arguments, a beach towel in virtually any given shape with an appropriate surface area would allow a person lying on the towel to move on the towel as the sun crosses the sky. In addition, numerous alternative designs for beach towels not only exist but also are in use, and no competitive advantage in gained in price or quality by the using the fanciful round shape for a beach towel. Further, the round beach towels that are the subject of the Defendant's Round Towel Trademark do not practice the claims of the asserted patents and therefore no right to copy the product design exists. Franco's Motion for Partial Summary Judgment should be denied.

## II.
## STATEMENT OF FACTS

Attached hereto as Exhibit "A" is the Declaration of the Defendant, Clemens Franek. Franek's Declaration establishes that he is the owner of United States Trademark

Registration No. 1,502,261. The trademark relates to a beach towel in a round shape ("Round Beach Towel Trademark). Defendant conceived of the idea of marketing and selling a round beach towel in around 1985. The first use of the mark was on August 15, 1985, and the first use of the mark in interstate commerce was on February 14, 1986.

The round beach towel trademark was originally in the name of CLM Design Inc. CLM used an assumed name of Son International. Defendant was the President of CLM Design. CLM subsequently assigned the trademark to Franek. CLM and Franek, individually and in conjunction with licensees, have used the mark continuously since the date of first use of the mark.

The various exhibits to Franco Motion for Partial Summary Judgment show the significant multi-million dollar promotion that has been undertaken to market and sell the Defendant's round beach towels. For example, Exhibits 10 and 23 to Franco's Motion detail some of the significant amount of money, resources and time devoted to advertising products incorporating the round beach towel up to that point in time. Defendant's Declaration provides that further resources have been expended through the present date to market and sell round beach towels subject to the Round Beach Towel Trademark.

Defendant's Declaration establishes that as the President of CLM Design and the originator of the round beach towel, he is familiar with beach towel industry. Defendant has been involved in designing, marketing and selling beach towels since 1985. CLM Design adopted the round shape of the beach towel so the round towel's original, distinctive, and peculiar appearance would distinguish it from other beach towels and identify the beach towels as coming from a single source, namely Son International. At the time Son International began selling round beach towels, the vast majority of existing beach towels

were rectangular or square in shape. Rectangular and square beach towels had been used for decades prior to our introduction of the round beach towel. According to Defendant, no one was selling round beach towels prior to his company's introduction of the round beach towel.

Defendant's Declaration establishes that the round beach towel is a design that is arbitrary, fanciful and ornamental. The design of the round beach towel is meant to be unique from a visual point of view in order to distinguish the round beach towel from all other shapes of beach towels.

Son International advertised the unique shape of its round towel in all of its advertisements. Son International, in fact, advertised the round beach towel as "the most radical fashion item since the bikini." See e.g., Franco's Exhibit 6. Son International also advertised the round beach towel through such advertisements as "Bound to be Round" and "Don't be Square." Franco Exhibit 4.

Son International stated in an advertisement that "now when the sun moves, your towel doesn't have to." Franco Exhibit 23. That same advertisement emphasizes in large all capital letters "HUGE ROUND BEACH TOWEL" and states that this round beach towel is a "LUXURIOUS ROUND BEACH TOWEEL – for LYING. NEARLY 6 FEET IN DIAMETER" The towel is touted in those ads as "The World's Greatest Beach Towel" Those advertisements then state in smaller type face as follows: "Now when the sun moves, you don't have to." Defendant's Declaration establishes that the focus of Son International's advertisement is on the large size and unique shape of the round beach towel. In addition the advertisements showed a six feet in diameter, round beach towel made by Son International.

Defendant's Declaration establishes, and common sense dictates, that the ability to reposition a person's body on a beach towel is governed by the surface area of a beach towel, as opposed to its shape.  For example, the average person could just as easily reposition that person's body on a six-foot square beach towel as on a round towel. The same is true of the many shapes of beach towels currently available, such as animals, flowers, fish, etc.

Beach towels come in many configurations.  The many alternatives for the design of beach towels are only limited by one's imagination.  Beach towels have traditionally been rectangular or square in shape. In addition, attached as an exhibit to Defendant's Declaration are examples of beach towels in many other shapes, such as the shape of different animals, fish, flowers, dresses, surfboards, etc.  The various configurations of beach towels are virtually endless.  Each one of these towels, if provided the appropriate surface area, would allow a person to move about the towel without repositioning herself on the towel. Therefore, the surface area of the towel, as opposed to the shape of the towel, would allow one to move their body on the towel as the sun moves across the sky.

The round beach towels sold by Son International, and subsequently by licensees and Defendant, are made using square towel stock.  The towel material is cut in a circular pattern and hemmed. Defendant's Declaration establishes that there are no inherent advantages from a cost perspective in making a round beach towel. In fact, removing the amount of material from the towel stock results in considerable waste.

Making a towel into a round shape does not result in any advantage in quality of the product.  The round towel is made of cotton, like the vast majority of other beach towels of various shapes and sizes.

Finally, Defendant's Declaration establishes that it is simply not true, as Franco's expert claims, that a round beach towel consumes less physical space when the towel is folded up as opposed to the myriad of other designs available with same surface area.

## III.
## ARGUMENT

A. <u>The Unique, Ornamental Design of Defendant's Round Beach Towel Is Non-Functional</u>

1. <u>Franco Has The Burden Of Proving That The Design Of The Round Towel Trademark is Functional.</u>

A registered trademark is presumed valid, and the party claiming invalidity has the burden of proving that the mark is invalid. *Specialized Seating, Inc. v. Greenwich Indust., Inc.*, 472 F. Supp. 2d 999, 1011-12 (N.D. Il 2007). The party challenging the functionality of a trademark bears the burden of proving that the mark is functional under Seventh Circuit precedent. *Id. See also, Publications, Int'l., Ltd. V. Landoll, Inc.*, 164 F.3d 337, 339-40 (7th Cir. 1998). Franco, and not the Defendant, accordingly bears the burden of proving that the Defendant's trademark is functional.

2. <u>The Functionality Doctrine</u>

A product design is functional when the product design is essential to the use of the product. *W.T. Rogers v. Keene*, 778 F.2d 334 (7th Cir. 1985). A product design is also functional when the design affects the cost or quality of the product, such that a competitor would be at a disadvantage if the competitor could not make products using the same design at issue. *Id.* at 339.

In order for this Court to cancel Defendant's well-established trademark, Franco must prove that the shape of the Defendant's round beach towel is essential for the product to carry

6

out its purpose as a beach towel, which is to provide a surface that separates a person from the ground. Further, Franco must prove that the round beach towel trademark places competitors at a competitive disadvantage by being precluded form making round beach towels, because alternative designs do not exist and also because the round shape of the beach towel affects the cost and quality of Defendant's beach towels.

The Defendant's testimony establishes, however, that the product was designed to be a unique, fanciful and arbitrary design for a beach towel. The round shape of a beach towel is not essential to its underlying purpose as a beach towel. Defendant's round beach towel was designed to visually stand out against the sea of more traditionally shaped beach towels and the myriad of other beach towel shapes that are being sold. Competitors are not placed at a disadvantage by being precluded from copying Defendant's trademarked design. Numerous alternative beach towel shapes exist, and the round shape does not affect the cost or quality of the beach towels. Further, through his sales and marketing efforts the round beach towels came to be known as associated with Defendant's mark.

Courts may look to many factors in order to determine whether a product design is merely functional, including the following: (1) whether the design element of the product practices the claims of a utility patent; (2) the utilitarian properties of the item's unpatented design elements; (3) advertising of the item that touts the utilitarian advantages of the item's design elements; (4) the dearth of, or difficulty in creating, alternative designs *See e.g., Specialized Seating, Inc. v. Greenwich Indust., Inc.*, 472 F. Supp. 2d 999 (N.D. Il 2007). A review of these factors establishes that Defendant's trademarked round beach towel is not functional and is entitled to trademark protection. At the very least, material questions of fact

7

exist as to whether the unique design of the round beach towels is functional so as to deny protection to this long standing and well established registered trademark.

a.)     The Design of Defendant's Round Beach Towel Does Not Practice The Asserted Patents.

The Supreme Court decision in *TrafFix Devices, Inc. v. Marketing Displays, Inc.*, 532 U.S. 23 (2001), addressed the issue of whether the existence of an expired utility patent foreclosed the possibility of a patentee claiming trade dress protection in the patentee's product's design that practiced the patent. *TrafFix* involved a dispute over wind-resistant mobile traffic stands. MDI was the original manufacturer and seller of these sign stands. MDI owned two utility patents for the mechanism containing two springs that kept the signs from being blown over in the wind. MDI manufactured its products pursuant to the claims contained in its patents. MDI's utility patents expired and a competitor, TrafFix, started to sell virtually identical sign stands with the same two-spring mechanism. MDI subsequently sued TrafFix for trade dress infringement.

The *TrafFix* court held that a product design practicing a utility patent does not foreclose the product design from being non-functional, but rather places a greater burden on a patentee claiming non-functionality of the patentee's product. The Court focused its functionality analysis on whether the patentee's expired patents claimed the same features for which the patentee sought trade dress protection. The Court compared the "essential feature" of patentee's trade dress against the "central advance" claimed in patentee's expired utility patents. The Court noted that the language of MDI's patents described that the purpose of the two spring design was to keep the signs upright even in heavy wind conditions; that the dual spring design prevented twisting of the signs in the wind; and the two spring construction

was more cost effective than a three spring design. The *TrafFix* court found that the dual spring design provided a unique and useful mechanism to resist the force of the wind, because the dual spring design was the reason the device worked. The Court accordingly found that because MDI's product was manufactured incorporating the claims of its own utility patents, and because the novelty of the two spring design was the reason that the product worked, the patentee could not claim trade dress protection on the product, as the product was functional.

Under the Supreme Court's *TrafFix* test, the court looks to whether the "essential feature" of the patentee's trade dress and the "central advance" of the patentee's expired patent overlap. The *TrafFix* Court's holding provides that the only where "the expired patent <u>claimed the features in question</u> one who seeks to establish trade dress protection carries a heavy burden." *TrafFix,* 532 U.S. at 30 (Emphasis added). Therefore, in order for a prior utility patent to provide evidence of a product design's functionality the product that is the subject of the trademark must practice, or infringe, the utility patent. *Keystone Mfg. Co. v. Jaccard Corp.*, 2007 U.S. Dist LEXIS 13094 (W.D. N.Y. 2007) at page 7. *See also, Fuji Kogyo Co., Ltd. V. Pac Bay Int'l, Inc.*, 461 F.3d 675, 687-91 (6th Cir. 2007); *Logan Graphic Products, Inc. v. Textus, Inc.*, 2002 U.S.Dist. LEXIS 24547 (N.D. IL 12/23/02). If the product that is the subject of the trademark does not practice the utility patent, then the direct connection between the patent and the product that is the subject of the trademark is absent. *Keystone Mfg. Co.*, at page 7.

In the present case, Franco's Motion for Partial Summary Judgment asserts that the functionality of the round towel is that a person does not need to move the towel as the sun moves across the sky. The evidence establishes this claimed functionality is not the reason

the product works. The products functions as a beach towel by separating a person from the ground. Further, the ability to reposition a person's body on a towel is governed by the surface area of a towel. A fanciful design like a round beach towel, a fish beach towel, an animal beach towel, a dress beach towel, etc. provides the same ability to move across the towel given an appropriate surface area. Under *TrafFix* and it progeny the round beach towel is not functional based on that basis.[1]

Franco's motion for partial summary judgment cites to five utility patents to argue that the Defendant's trademarked design is only functional. When analyzing those patents it is important to note that these are not the Defendant's patents. The *TrafFix* decision, and those decisions following *TrafFix*, focus on situations where a patentee's utility patent expires and the patentee then claims protection for the design of the product under a trademark or trade dress theory. The *TrafFix* line of cases hold that the patentee bargained for a complete monopoly on the function of the product by obtaining a utility patent on the device and may not then extend that bargain by subsequently seeking trademark or trade dress protection on functional elements claimed in the patent. Here Defendant has made no such bargain. The patents being asserted against Defendant's trademark are not and have never been owned by the Defendant. Nevertheless, a review of the claims of each patent establishes the "essential feature" of Defendant's trademark does not practice the "central advance" of the asserted patents.

The central advance of each of Franco's asserted patents is not a round beach towel. Rather, the central advance of the utilitarian functions claimed in the patents are features that enhance a person's convenience in transporting, storing and/or hanging a towel. For example,

---

[1] Franco also claims that the round towel design takes up less physical space when folded, a claim which is not supported in the affidavit of Franco's expert. Further, Defendant Declaration provides evidence rebutting that claim.

the central advance of patent 2,803,845 is adding elastic straps to a bath towel so that the towel may be hung on a bath towel rack.

Franco's asserted patent no. 4,794,029 was filed on February 24, 1987, more than one year **after** Defendant began using the Round Towel Trademark. Therefore, the patent certainly could not have anticipated the claimed functionality of Defendant's trademark. The central advance of the '029 patent is to convert a towel into a bag therefore making it easier to store and transport. The central advance of French patent 2,399,339 is to attach hooks to a towel in order to shorten the towel's hanging distance. The central advance of the 4,991,978 patent is a towel that contains a separate bag and draw strings for carrying the towel. The central advance of the 3,660,861 patent is a combination wall hanging unit and fixture that attaches to a wall and allows the towel to be hung on a wall. In each asserted patent the "central advance" is **not** a round beach towel.

Attached as Exhibit "B" hereto as claims charts showing the claims of the asserted patents as compared to the Defendant's Round Towel Trademark. As those claims charts establish, Defendant's round beach towels do not practice the elements of any of the claims of the asserted patents.

Franco's expert witness claims that the patents render the trademark functional, because a circular towel is mentioned in the patent claims. The relevant case law provides, however, that for the utility patent to even constitute evidence of functionality the product's design must practice, or infringe, the claims of the patent. As the court in *Keystone*, noted:

> [U]nder Traffix, only a proper utility patent (or patents) that is practiced by the products at issue is evidence of functionality for trade dress purposes. Otherwise, the direct connection between the expired patents and the claimed trade dress that was critical in *TrafFix* is absent.

*Keystone Mfg.*, 2007 U.S. Dist LEXIS 13094 at page 7.

11

Defendant's trademarked round beach towel does not infringe any of the asserted patents. Franco's expert's "opinions" that the mention of a round towel in a patent's specification or a portion of a claim render the trademark invalid are not based on a proper reading of the law. Franco's expert "opinions" should therefore be disregarded. *See e.g., Integra Lifesciences I, Ltd. V. Merck KgaA,* 496 F. 3d 1334, 1342 (Fed. Cir. 2007).

    b.)    <u>Utility of the Round Towel Design</u>

Each product that is the subject of a product design trademark carries some purpose. For example, a wine bottle considered in the case of *In re Application of Mogan David Wine Corp.*, 51 C.C.P.A. 1260, 328 F. 2d 925 (C.C.P.A. 1964), performs a function, holding wine. That function could be equally well served by other containers of various shapes. The incidental function of the shape, i.e. holding wine, does not preclude the shape from obtaining trademark protection. *See also, Kohler Co. v. Moen Inc.*, 12 F.3d 632 (7th Cir. 1993) (design of handle for faucet protectible trademark).

Defendant's beach towel is circular in form. The design of the round beach towel is arbitrary, ornamental and fanciful. The design was chosen to be a unique shape and something out of the ordinary from the myriad of different shapes that are available for beach towels. In reliance on that trademark, Defendant has expended considerable sums of money and resources in the marketing, manufacturing and selling the round beach towels.

    c.    <u>The Advertising At Issue Does Not Warrant A Finding of Functionality.</u>

All of the advertising surrounding the round beach towel advertised the unique shape of the round beach towel. The advertising touts the beach towel as "the greatest fashion statemet on the beach since the bikini." The advertisements state "Don't be Square" and "Bound to be Round." Several advertisements state that "as the sun moves your towel dosen't have to."

Those advertisements advertised a six feet round towel. As established in this Response, however, that ability to move a person's body on a towel is governed by the surface area of the towel. In this case, a square towel, a towel in the shpae of a flower, a fish, etc, if given that same six feet dimension would also allow a person to move their body on the towel as the sun moves across the sky. The puffery contained in the advertisements is not determinative of the functionality of the round beach towel.

d.)    <u>Numerous Alternatives Exist For The Shape of Beach Towels and Therefore Competitors Are Not At A Disadvantage By Being Precluded From Selling Round Beach Towels.</u>

Beach towels are made in many shapes and sizes. Traditional beach towels were rectangular or square. In addition, as is shown in Defendant's Declaration beach towels come in numerous shapes such as in the shapes of animals, fish, surfboards, flowers, dresses, etc. The shape of beach towels are limited only by one's imagination. Competition is not stifled by the inability of competitors to sell round beach towels.

e.)    <u>The Design Feature Of The Round Towel Does Not Affect The Cost Or Quality of The Beach Towels.</u>

The shape of the round beach towel does not affect the cost or quality of the beach towel, such that a competitor would be at a disadvantage if forced to make a beach towel in a non-circular shape. Beach towels have been used for decades, in many shapes and sizes. The Defendant's round beach towels start their lives as square towel stock. The towel stock is then trimmed into a round shape and hemmed at the ends. This process wastes a great deal of material, which is then discarded. Therefore, the cost to manufacturer towels in a round configuration is in fact greater than the cost for a competitor to make more traditional square or rectangular towels. Under established Seventh Circuit precedent, a feature is functional if

its one that is costly to design around or to do without, rather than one that is costly to have. *Schwinn Bicycle Co. v. Ross Bicycles, Inc.*, 870 F.2d 1176, 1189 (7th Cir. 1989).

Further, the shape of the round beach towel does not affect the quality of the product. The product is made from towel stock, which may vary in thickness and quality. The round shape does not dictate that a certain quality of product must be used.

f.) <u>Judge Cudahy's Dicta In A Dissenting Opinion Bears No Relevance To The Instant Motion For Summary Judgment</u>

Franco's Motion cites to a dicta reference in a dissenting opinion that calls allegedly calls the trademark at issue "horrible". In fact, Franco has not provided the entire quote in it Motion, nor does Franco's Motion bother to state that the comment is found in a dissenting opinion. Nevertheless, the majority opinion in that same case upheld a trademark for a product design. *Kohler*, 12 F.3d 632. Judge Cudahy's dissenting opinion in that case argued that the Seventh Circuit should not provide trademark status to **any** product configuration. Judge's Cudahy's statements in that dissenting opinion and idea that no product configuration should be given trademark protection has been rejected by the United State's Trademark Office, the United States Supreme Court and all other lower court decisions to address the issue of registering a trademark for a product design. Further, the majority in that Seventh Circuit opinion used the Defendant's trademark as a consideration in granting trademark protection to the product design of a lavatory handle. *Id.* Contrary to Franco's implication, the majority in the *Kohler* case actually upheld a product design much like the Defendant's own design at issue in this case.

B. <u>No Right to Copy Exists Because the Asserted Utility Patents Did Not "Invent" The Round Beach Towel And The Round Beach Towel Has Acquired Secondary Meaning.</u>

14

Franco claims that it has a right to copy the Defendant's trademarked round beach towel, because the cited utility patents have expired. The Seventh Circuit has ruled that if a product design is non-functional then it is entitled to trademark protection, even if a certain feature of the design is mentioned in a utility patent. Therefore, the no right to copy the product design exists after a utility patent expires.

Non-functional features disclosed in a patent may be entitled to trademark protection. The issue of the right to copy turns on whether the product feature at issue is functional. If the feature is functional then a right to copy exists after the expiration of a utility patent, if the feature is non-functional and the feature is protected by a trademark or trade dress then a right to copy does not exist. *Kohler*, 12 F.3d at 643. Moreover, the Trademark Office has accepted Defendant's Section 15 Declaration of Incontestability as is shown in Franco's exhibit 14 page 3.  and Franco may not contest that the mark has obtained secondary meaning. *Second Body Chance Armor, Inc. v. American Body Armor & Equip., Inc.*, 1999 U.S. Dist. LEXIS 17201 (N.D. Il 10/5/99).

## IV.
## CONCLUSION

In the present case, the evidence establishes that the product feature at issue is not functional. At the very least, questions of fact exist as to whether the product design contains a function that rises to a level warranting cancellation of the well-established mark.

For the reasons set forth herein, Clemens Franek requests that this Court deny Jay Franco & Sons, Inc.'s Motion for Partial Summary Judgment.

                                             Respectfully submitted,

                                             /Mark D. Roth/
                                             Attorney for Franek