# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

|  |  |  |
|---|---|---|
| JAY FRANCO & SONS, Inc., | ) | |
| | ) | Civil Action No. 1:08-cv-01313 |
| Plaintiff, | ) | Consolidated with No. 1:08-cv-0058 |
| | ) | |
| v. | ) | Judge Dow |
| | ) | |
| CLEMENS FRANEK, | ) | JURY DEMAND |
| | ) | |
| Defendant. | ) | |

## PLAINTIFF'S RESPONSE TO JAY FRANCO & SONS, INC'S LOCAL RULE 56.1 STATEMENT OF MATERIAL FACTS AS TO WHICH THERE IS NO GENUINE ISSUE

  Clemens Franek, through his attorneys, Orum & Roth LLC response to Jay Franco & Sons, Inc. Statement of Material Facts as to Which There is No Genuine Issue as follows and for its own statement of material facts states:

  Plaintiff Jay Franco & Sons, Inc. is incorporated under the laws of New York and has its principal place of business at *295* Fifth Avenue, Suite 1712, New York, New York 10016. Jay Franco is in the business of importing, marketing, distributing, and selling bedding, bath, beach, and kitchen accessories. Jay Franco has been in business for over 60 years, and distributes its products nationally in department stores, specialty stores, and through mass merchants including Walmart Stores, Inc. ("Walmart"), and Target Corporation ("Target"). (Jay Franco & Sons, Inc.'s Complaint for Declaratory Judgment

And Other Relief filed March 5, 2008 ("Complaint") at ¶2.).

Response: Franek admits that Franco is incorporated in New York and admits to its principal place of business. Franek admits that Franco sold round beach towels to Walmart and Target. Franek denies the remaining facts. See Franek's Answer and Counterclaim to Franco's Complaint (hereinafter "Answer") at ¶. 2.

2. Defendant Clemens Franek ("Franek")~ is a citizen of the United States who resides and has or has had offices at 4601 Post Road, East Greenwich, Rhode Island 02818. Defendant Franek is currently employed as a senior executive at Conundrum Entertainment located at 325 Wilshire Boulevard, Suite 201, Santa Monica, California 90401. (Complaint ¶2).

Response: Franek admits to the first sentence. The second sentence is not alleged in the Complaint and therefore the statement fails to allege a proper citation to the record. Franek denies on that basis.

3. In 1985, Defendant Franek, founded CLM Design, Inc. ("CLM"), d/b/a Son International, Inc. or Sons, Inc., along with Woodrow ("Woody") Harrelson, Robert Farley, and Glen Grunwald. CLM was an Illinois corporation, originally located at 901 Hermosa Avenue, Hermosa Beach, California 90254 and was engaged in the business of marketing, selling, and distributing beach accessories, including round beach towels. CLM has maintained other offices, affiliates, or subsidiaries operating under the same name, located at 8217 Beverly Boulevard, Beverly Hills, California 90048 and 4601 Post Road, East Greenwich, Rhode Island 02818 (Complaint at ¶. 3, attached Exhibit F,page 70, attached Exhibit H, page 78.

Response: Exhibits F and H do not reference the facts stated herein, and therefore the

statement is not supported by the record.   Further, answering  Admits.

4. On October 29, 1986, Defendant Franek's company. CLM, filed a Trademark Application ("Application") for a "round or circular" configuration of a beach towel (sometimes hereinafter referred to as the "Round Towel Mark"). The Application claims that CLM first used the Round Towel Mark in commence on February 14, 1986. (Complaint ¶7-8, attached Exhibit H, page 78) (Exhibit 1).

Response: Admits. Answer at ¶. 7

5. On August 30, 1988, the PTO registered CLM's Round Towel Mark as U.S. Trademark Registration 1,502,261 shown below.



(Complaint ¶¶7-8, attached Exhibit H, page 78)(Exhibit 14).

Exhibits referring to letters (e.g. Exhibits A, B, C, etc.) are attached to Jay Franco's Complaint.

Response: Admits.


6. On July 1, 1994, CLM was dissolved (as indicated by The State of Illinois' Department of Business Services Database.). (Complaint ¶36, attached Exhibit H, page 76)(Exhibit 14). U.S. Trademark Registration No. 1,502,261 indicates that on July 2, 2007, a nunc pro tunc Assignment was recorded transferring the rights of said trademark registration from the then dissolved CLM Design, Inc. to Defendant Franek. (Complaint ¶¶ 9 and 37, attached Exhibit H, page 77)(Exhibit 14).

Response: Admits. Answer at ¶. 9.


7. In 2006, Jay Franco received a letter from Franek's former legal counsel, Mr. Raymond N. Nimrod, Esq. and Ms. Elayna T. Pham, Esq. then of Jenner & Block (located at 300 N. Wabash Avenue, Chicago, Illinois 60611-7603), notifying Jay Franco of violating U.S. Trademark Registration No. 1,502,261 for its past sales of round towels to Target, Walmart, and other retailers. Settlement discussions ensued at that time between Franek and Jay Franco. However, these discussions ended sometime in the fall of 2006, and after time passed, Jay Franco believed that the matter had ended. (Complaint ¶10, attached Exhibits A through D, pages 13-32).

Response: Franek admits that lawyers for Franek and Franco conducted settlement discussions. Franek denies the remaining allegations. Answer at ¶. 10.

8. Approximately two (2) years later, on January 3, 2008, Defendant Franek filed suit in this

judicial district against Jay Franco's customers, Walmart Stores, Inc. ("Walmart") and Target Corporation ("Target"), but not against Jay Franco. Franek alleges in his Complaint against Walmart and Target that Walmart's and Target's past advertisements, sales, purchasing, and marketing of round beach towels have violated Franek's alleged trademark rights to U.S. Trademark Registration No. 1,502,261 for the Round Towel Mark. (Complaint ¶¶ 4-5).

Response: Admits.

9.    Plaintiff Jay Franco was the vendor to Walmart and Target for the round beach towels in question. By way of indemnification agreements with Walmart and Target, Jay Franco has agreed to hold harmless and defend Walmart and Target. (Complaint ¶6).

Response: Denies. Answer at ¶. 6

10.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, 1332, 1338(a) and 1338(b); 15 U.S.C. § 1121; and 28 U.S.C. § 1367. (Complaint ¶14).

Response: Admits.

11.    Venue in this district is proper pursuant to 28 U.S.C. § 1367. (Complaint ¶15).

Response: Admits.


12.    On October 29, 1986, CLM, d/b/a Son International, or Sons, Inc., filed its Trademark Application ("Application") for the round or circular configuration of a beach towel. (Exhibit l). In its 1986 Application, CLM submitted a depiction of a white disc and stated that the Application sought registration for a mark "used in connection with beach towels, beach towel product configuration(specifically, the round shape of a beach towel), packaging, promotional materials, and labels." (Complaint ¶¶7-8, attached Exhibit H, page 78)(Exhibit l).[2]

Response: Admits.

13. In its 1986 Application, CLM submitted five (5) photographs of specimens showing the Round Towel Mark. One of these specimens was a Woodward & Lothrop Department Stores' advertisement for CLM's "Round-up new "S[o]nspot beach towel" which states: "Find your spot in the sun without moving your towel around." (Emphasis added). (Exhibits 1 and 2)

    Response: Franco has not properly introduced the exhibit into evidence through an affidavit or deposition verifying to its authenticity, pursuant to Federal Rule 56(e). Further, Franco has misquoted from the claimed advertisement and five photographs showing a round beach towel are not attached as Exhibits 1 and 2. Further answering, Franco's emphasis on certain language in the statement of facts is improper argument pursuant to Local Rule 56.1. Franek therefore denies the allegations.


14.    On March 20, 1987, the United States Patent and Trademark Office ("PTO") issued a first Office Action ("First Office Action"), in response to CLM's Application. In its First Office Action, the PTO refused registration of CLM's Application on the Principal Register under Section 2(e) of the Lanham Act, on the grounds that the requested mark constituted "a configuration of the goods" and as such, was "merely descriptive of the goods." The PTO further stated in the First Office Action that: "In the absence of evidence that ... [the mark] ha[d] a secondary meaning or had become distinctive, as applied to the goods, it ... [could] not be registered on the Principal Register." In addition, the PTO requested in its First Office Action a copy of any patent applications for the round towel configuration that had been submitted by CLM. (Exhibit 3).

Response: Franco's allegations fail to set forth a short, concise paragraph and contains numerous claimed allegations of fact in violation of Local Rule 56.1. Further, the facts do not provide the basis for granting or denying Franco's Motion and therefore are irrelevant. Notwithstanding those objections, Franek admits to the existence of the Office Action.

15.    On September 21, 1987, CLM submitted its response ("September 1987 Response") to the 1987 First Office Action that refused registration. In CLM's response to the PTO's rejection that the Round Towel Mark constituted "a configuration of the goods" and was thus, "merely descriptive of the goods," CLM argued that the Round Towel Mark was distinctive, had acquired secondary meaning, and was therefore entitled to registration. (Exhibit 4).  In support of these arguments, CLM submitted numerous exhibits (consisting of CLM' s promotional advertisements, brochures, packaging materials, and labels) depicting CLM's round towel used in connection with its **SONSPOT** trademark, (Exhibits *4-5),* the Declaration of Glen E. Grunwald, Vice President and Secretary of CLM (Exhibits 4 and 6), as well as nineteen (19) substantially identical declarations that had been previously prepared by CLM's legal counsel and later signed by members of the retail beach towel industry (Exhibits 4 and 7). These submitted declarations stated that the Round Towel Mark sought to be registered: had acquired the ability to distinguish CLM's brand of beach towels from other beach towels, was unique, identified CLM's product from a distance, that no competitive product was similarly configured, and that any product so configured would come from the same source and be of equal quality. (Exhibits 4 and 7)

Response:  Franco's allegations fail to set forth a short, concise paragraph and contains numerous claimed allegations of fact in violation of Local Rule 56.1. Further answering, the allegation that the affidavits were all drafted by Franek's attorney is

not a part of any record in this case.  Notwithstanding, admits.

16.   In response to the PTO's request in its First Office Action that CLM submit a copy of any of its patent applications for the round towel configuration, CLM submitted in its September 1987 Response a copy of a design patent application entitled "Beach Towel for Outdoor Use," invented by Defendant Clemens F. Franek. (Exhibits 4 and 8). This submitted design patent application entitled" Beach Towel for Outdoor Use" consisted of one (1) page containing the specification and        claim, one (1) page of drawings (including three figures), and two (2) pages containing the combined declaration and power of attorney. (Exhibit 8).

Response: Admits.

17. CLM's design patent application entitled "Beach Towel for Outdoor Use" was prepared by Mr. Raymond N. Nimrod, Esq. then of Neuman, Williams, Anderson & Olson (located then at 77 West Washington Street, Chicago, Illinois 60602). (Exhibits 8). In addition, as previously stated, in 2006, the same Mr. Nimrod. of Jenner & Block, sent Jay Franco a letter on behalf of Defendant Franek that first notified Jay Franco of violating U.S. Trademark Registration No. 1,502,261 for its past sales of round towels to Target, Walmart, and other retailers. (Complaint ¶10, attached Exhibits A through D, pages 13-32) (Exhibit 8).

Response: Franco's allegations fail to set forth a short, concise paragraph and contains numerous claimed allegations of fact in violation of Local Rule 56.1.  Further answering, admits.

18. CLM's design patent application entitled "Beach Towel for Outdoor Use" claims the

ornamental design for a beach towel for outdoor use. (Exhibit 8). It describes and depicts a beach towel with a round or circular configuration comprised of a fabric that features a uniform "weaved pattern" across the top and bottom of the round towel (as shown in Figure 1). (Exhibit 8). In addition, a stitched-on border is depicted that is shown to be attached around the circumferential edge of the round towel's "weaved" fabric (as shown in Figure 3), (Exhibit 8).

Response: Franco's allegations fail to set forth a short, concise paragraph and contains numerous claimed allegations of fact in violation of Local Rule 56.1. Further answering, admits.

18. In response to the PTO's request in its First Office Action that CLM submit a copy of any of submitted patent applications for the round towel configuration, CLM did not submit any citation of art prior to the filing date of its design patent application entitled "Beach Towel for Outdoor Use." (Exhibits 4 and 8). In response to the PTO's request in its First Office Action, CLM did not disclose to the PTO any active or expired, utility or design patents that were published or granted prior to the filing date of its design patent application which disclosed, claimed, or depicted round or circular towel configurations. (Exhibits 4 and 8). In addition, CLM did not disclose to the PTO any active or expired, utility or design patents that were published or issued prior to the October 29, 1986 filing date of CLM's Trademark Application which disclosed, claimed, or depicted round or circular towel configurations. (Exhibits 4 and 8).

Response: Franco's allegations fail to set forth a short, concise paragraph and contains numerous claimed allegations of fact in violation of Local Rule 56.1. Further answering, the

First Office Action did not request copies or information related to any patents other than a patent application filed by the Applicant for the trademark.  Exhibit 3 to Franco's Motion states, in relevant part as follows:  "If applicant has submitted a patent application for the round towel configuration, please submit a copy of that application."  Franek therefore denies the allegations.  See, Exhibit 3 to Franco's Motion.

20.    On October 16, 1987, the PTO issued a Priority Office Action ("Priority Office Action"), in response to CLM's September 1987 Response to the PTO's First Office Action. In its Priority Office Action, the PTO requested further evidence proving secondary meaning of CLM's Round Towel Mark including: (1) a videotape of the television commercials that promoted CLM's Round Towel Mark, and (2) sales and advertising figures for CLM's round beach towel. (Exhibit 9).

 Response: Admits.


21. On December 16, 1987, CLM submitted its response ("1987 December Response") to the PTO's Priority Office Action. In CLM's 1987 December Response to the PTO's Priority Office Action, CLM provided the PTO with a copy of the requested videotape, as well as, information concerning its advertising and promotional expenditures, extent of television and newspaper promotions, and sales figures for its round beach towels supported by a submitted Declaration of Clemens Franek. In the same 1987 December Response, CLM once again argued that its Round Towel Mark had acquired secondary meaning and referred the PTO to its remarks, exhibits, and nineteen (19) declarations that had been previously submitted in CLM's September 1987 Response to the PTO's First Office Action. (Exhibit 10).

Response: Franco's allegations fail to set forth a short, concise paragraph and contains numerous claimed allegations of fact in violation of Local Rule 56.1.  Further answering, admits.

22. On January 29, 1988, the PTO withdrew its March 20, 1987 rejection of CLM's Trademark Application because (according to the PTO) CLM had submitted sufficient evidence of distinctiveness under Section 2(f) of the Lanham Act to overcome the PTO's previous Section 2(e) rejection based on the "configuration" of the Round Towel Mark being "merely descriptive of the goods." (Exhibit 11).

Response: Admits.


23.  On April 5, 1988, the PTO approved and published CLM's Round Towel Mark in the Official Gazette, (Exhibit 12).

Response: Admits.


24.  On May 5, 1988, Spring Industries, Inc., a Delaware corporation, with offices at 205 North White Street, Fort Mill, South Carolina, requested a thirty-day extension of time to file an opposition to oppose the federal registration of CLM's Round Towel Mark. However, on May 24, 1988, Springs Industries withdrew their extension of time to Oppose the federal registration of CLM's Round Towel Mark. (Exhibit 13).

Response: Admits.


25.On August 30, 1988, the PTO registered CLM's Round Towel Mark as a federal trademark

— U.S. Registration No. *1,502.261.* (Complaint ¶¶ 7-8, attached Exhibit H, page 78)(Exhibit 14).

Response: Admits.

26.     U.S. Patent No. 2,803,845 ("the expired '845 utility patent") entitled "Circular Towel" to Marjorie P. Bradford was filed on June 14, 1954, was granted on August 27, 1957, and expired on August 27, 1974. (Complaint, attached Exhibit E, pages 48-49)(Exhibit 15)(Declaration of Robert J. Anders (hereinafter "Anders Dec.") ¶24).

Response: Admits.


27.1    The '845 utility patent entitled "Cicular Towel" was granted approximately twenty-nine (29) years before Franek filed its trademark Application for the Round Towel Mark or even first used the Round Towel Mark in commerce. In addition, the '845 utility patent entitled "Cicular Towel" **expired** approximately twelve (12) years before CLM filed its trademark Application for the Round Towel Mark or even first used the Round Towel Mark in commerce. Thus, the '845 expired utility patent entitled "Circular Towel" went into the **public domain** twelve (12) years <u>before </u>Franek later registered the round shape of beach towel as a trademark in U.S. Trademark Registration No. 1,502,261. (Complaint ¶¶7-8, attached Exhibit E, pages 48-49 and Exhibit H, page 78)(Exhibits 14 and 15).

Response: Franco's allegations fail to set forth a short, concise paragraph and contains numerous claimed allegations of fact in violation of Local Rule 56.1.  Further answering, Franco's claim that a "circular towel" was in the public domain after the patent expired is contrary to the claims of the patent and therefore, Franek denies the allegations.   Exhibit 15.

27.2    The '845 expired utility patent entitled "Circular Towel"discloses, claims, and shows

the same circular configuration of a round towel depicted in Franek' s trademark registration.

(Complaint ¶¶ 7- 8, attached Exhibit E, pages 48-49 and Exhibit H, page 78)(Exhibits 14 and

15)(Anders Dec. ¶ 25).

Response: Denies. Exhibit 14 and 15. Answer ¶ 18- 19.


28.    The specification of the expired '845 utility patent entitled "Circular Towel" states

that:

    [A]n object of this invention is to provide a towel <u>which is constructed
    in circular form</u> and includes means for suspending the same from a towel rack.

(Complaint, attached Exhibit E, pages 48-49, col. 1, lines 16-18)(Exhibit 15, col. 1, lines 16-18)

    Anders Dec. ¶26)(emphasis added).

Response: The statement of alleged fact constitutes an argument of counsel and is therefore

    improper under Local Rule 56.1.


29.    The claim in the expired '845 utility patent entitled "Circular Towel" recites and

claims the "circular body" of a towel which functions integrally and cooperatively in

combination with other elements of the claimed invention. The claimed circular shape is set

forth in the claim:

    What is claimed is:
        In combination, a <u>towel</u> and suspension means therefore compromising, a
    circular fabric body, a  reinforced disc for said <u>[circular fabric] body,</u> a pair of
    crossed straps positioned on said disc with the ends of said straps extending
    under the edge of said disc, stitching extending through said <u>[circular fabric]</u>

body, said disc and said straps securing said [circular fabric] body, said disc and said straps together, with said disc disposed centrally of said circular fabric-body, and adjustable elastic suspension member extending under said crossed straps for suspending said [circular fabric] body and means joining the opposite ends of said elastic suspension members to form a closed loop.

(Complaint, attached Exhibit E, pages 48-49. col. 2. lines 31 -43)(Exhibit 15, col. 2, lines 31-43)(Anders Dec. ¶27)(emphasis added).

Response: Franco fails to accurately cite the claimed language in the patent at issue. Franco has improperly inserted the phrase "[circular body]" in the patent claims, when that term is not used in the patent. Further answering, the inserting that language in the patent an improper argument of counsel. Franek accordingly denies. Exhibit 15.

30. The expired '845 utility patent entitled "Circular Towel" does not claim or address a towel or fabric having a shape other than circular, nor is there any mention, suggestion, or teaching of using a towel having any shape other than circular. (Complaint, attached Exhibit E, pages 48-49)(Exhibit 15)(Anders Dec. ¶27).

Response: Denies. Exhibit 15, C1: lines 34-35.

31. Figure 1 of the expired '845 utility patent entitled "Circular Towel" shows the same circular configuration as the round towel which went into the public domain before Franek later registered the Round Towel Mark as a trademark in U.S. Trademark Registration No. 1,502,261. Shown below on the left is Franek's registered trademark for the round beach towel in U.S. Trademark Registration No. 1,502,261 and on the right is the circular towel shown in Figure 1 of the expired '845 utility patent entitled "Circular Towel":



Int. Cl.: 24

Prior U.S. Cl.: 42

**United States Patent and Trademark Office** Registered Aug. 30, 1998

Reg. No. 1,502,26?

**TRADEMARK**
**PRINCIPAL REGISTER**

CLM DESIGN, INC. (ILLINOIS CORPORA-
TION), DBA SONS, INC.
SUITE NO. 7
8217 BEVERLY BOULEVARD
BEVERLY HILLS, CA 90048

FOR: BEACH TOWELS, IN CLASS 24 (U.S.
CL. 42).

FIRST USE 8-15-1983; IN COMMERCE
2-14-1986.
THE MARK CONSISTS OF A CONFIGURA-
TION OF A ROUND BEACH TOWEL.
SEC. 2(F).

SER. NO. 627,482, FILED 10-29-1986.

JANICE O'LEAR, EXAMINING ATTORNEY

(Complaint ¶¶7-8, attached Exhibit E, pages 48-49 and Exhibit H, page78)(Exhibits 14 and 15)(Anders Dec. ¶28)

Response: Denies.  Further answering, the illustrations are not the same as is shown by a review of the Exhibits. Moreover, the implication that they are the same is improper argument and not a statement of a fact in the record.

32. The expired '845 utility patent entitled "Circular Towel" also explicitly discloses the functional advantages of the circular configuration of the claimed circular towel. As stated in the '845 utility patent:

> The circular form of the towel body 10 provided a relatively large area of toweling for use by small children and by suspending the body 10 with an elastic strap or band the tapes 13 and 14will at be placed under undue tearing strain if the [circular] towel is pulled laterally or downwardly with respect to rack bar 16.

(Complaint, attached Exhibit E, pages 48-49,col. 2, lines 22-27 )(Exhibit 15, col. 2, lines 22-27) (Anders Dec. ¶29)(emphasis added).

Response: Franco's allegations fail to set forth a short, concise paragraph and contains numerous claimed allegations of fact in violation of Local Rule 56.1.

The allegations represent legal arguments and are therefore not a statement of fact, as required by Local Rule 56.1.

33. U.S. Utility Patent No. 4,794,029 ("the '029 utility patent") to Lynne H. Tennant, et al. entitled "Towel that Converts into a Bag" was filed on February 24, 1987 and was granted on December 27, 1988. (Complaint, attached Exhibit E, pages 40-47)(Exhibit 16). The '029 discloses, claims, and shows the same circular configuration of a round towel that Franek registered as a trademark in U.S. Trademark Registration No. 1,502,261. (Complaint ¶¶7-8, attached Exhibit E, pages 40-47 and Exhibit H, page 78)(Exhibits 14 and 16)(Anders Dec. ¶¶31-32).

Response: Franco's allegations fail to set forth a short, concise paragraph and contains numerous claimed allegations of fact in violation of Local Rule 56.1. The allegations represent legal arguments and are therefore not a statement of fact, as required by Local Rule 56.1.

34. The specification of the '029 utility patent discloses the <u>functionality</u> of the circular configuration of the towel:

> It is an object of this invention to provide a <u>circular section</u> of woven terry fabric that <u>when used as a towel for sunbathing requires no repositioning toward the changing angle of</u> the sun.

(Complaint, attached Exhibit F, pages 40-47, col. 1, lines 1-8 )(Exhibit 16, col. 1, lines 1-8) (Anders Dec. ¶33)(emphasis added).

<u>The circular shape of the towel allows for the repositioning of the human body toward the</u> <u>changing angle of  the sun while the towel remains stationary, thereby eliminating the need</u> <u>for continual repositioning of the towel</u> as with the conventional rectangular sunbather towel.

(Complaint, attached Exhibit E, pages 40-47, col.1 lines 58-63)(Exhibit 16, col.1,lines 58-63)

(Anders Dec. ¶33)(emphasis added).

Response: Franco's allegations fail to set forth a short, concise paragraph and contains numerous claimed allegations of fact in violation of Local Rule 56.1. The allegations represent legal arguments and are therefore not a statement of fact, as required by Local Rule 56.1.

35.   Claim 2 of the '029 utility patent also claims the <u>functional</u> advantages of how the circular configuration of the towel cooperatively functions with the sun.  Claim 2 of the '029 utility patent reads as follows:

   2. A towel bag construction as set forth in claim 1 wherein said <u>towel is circular in</u> <u>shape, whereby a user while sunbathing may reposition his or her body towards the</u> <u>changing angle of the sun while the towel remains stationary.</u>

(Complaint, attached Exhibit E, pages 40-47, col.3, lines 5-9)(Exhibit 16, col.3, lines 5-9)(Anders Dec. ¶34)(emphasis added)

Response: Franco's allegations fail to set forth a short, concise paragraph and contains numerous claimed allegations of fact in violation of Local Rule 56.1. The allegations represent legal arguments and are therefore not a statement of fact, as required by Local Rule 56.1.

36.  Figure 1 of the '029 utility patent shows the same circular towel configuration as the round towel which Franek registered as a trademark in U.S. Trademark Registration No. 1,502,261. Shown below on the left is Franek's registered trademark for the round beach towel in U.S. Trademark Registration No. 1,502,261 and on the right is the circular towel shown in figure 1 of the '029 utility patent:

(Complaint, attached Exhibit E, pages 40-47)(Exhibit 16)(Anders Dec. ¶35)

Response: Franco's allegations fail to set forth a short, concise paragraph and contains numerous claimed allegations of fact in violation of Local Rule 56.1. The allegations represent legal arguments and are therefore not a statement of fact, as required by Local Rule 56.1.

37.    French Utility Patent No. 2,399,229 ("the '229 French Utility Patent") to Devalois, et al. was granted on April 6, 1979. (Complaint, attached Exhibit E, pages 56-58)(Exhibit 17). That is, the '229 French Utility Patent was granted approximately seven (7) years before Franek filed its trademark Application for the Round Towel Mark or even before Franek first used the Round Towel Mark in commerce. The '229 French utility patent discloses and shows the functional aspects of the same circular configuration of the round towel that Franek registered as a trademark in U.S. Trademark Registration No. 1,502,261. (Complaint ¶¶7-8, attached Exhibit E, pages 56-58 and Exhibit H, page 78)(Exhibits 14 and 17)(Anders Dec. ¶¶37-38).

Response: Franco's allegations fail to set forth a short, concise paragraph and contains numerous claimed allegations of fact in violation of Local Rule 56.1. The allegations represent legal arguments and are therefore not a statement of fact, as required by Local Rule 56.1.

38.  The '229 French utility patent discloses the <u>functionality</u> of the circular configuration of the claimed round towel:

> The towel or cloth suspended from a hook is <u>designed to have the shortest possible hanging  length, and is therefore preferably circular</u>.

(Complaint, attached Exhibit E, page 56)(Exhibit I 7)(Anders Dec. ¶39).

Response: Franco's allegations fail to set forth a short, concise paragraph and contains numerous claimed allegations of fact in violation of Local Rule 56.1. The allegations represent legal arguments and are therefore not a statement of fact, as required by Local Rule 56.1.

39.     Figure 1 of the '229 French utility patent illustrates the same circular configuration for a round towel which Franek later registered as U.S. Trademark Registration No. 1,502,261. Shown below on the left is Franek's U.S. Trademark Registration No. 1,502,261 for a round beach towel and on the right is Figure 1 of the '229 French utility patent:

Response: Franco's allegations fail to set forth a short, concise paragraph and contains numerous claimed allegations of fact in violation of Local Rule 56.1. The allegations represent legal arguments and are therefore not a statement of fact, as required by Local Rule 56.1.

40. U.S. Utility Patent No. 4,991,978("the '978 utility patent") to Michael J. Ostrowski entitled "Towel Bag Combination Apparatus" was filed on January 16,1990 and was granted on February 12,1991. (Complaint, attached Exhibit E, pages 34-47)(Exhibit 18). The '978 utility patent discloses, claims, and shows the same circular configuration of a round beach towel and Franek registered as the trademark in U.S. Trademark Registration No. 1,502,261.

(Complaint ¶¶7-8, attached Exhibit E, pages 34-47 and Exhibit H, page 78)(Exhibits 14 and 18)(Anders Dec. ¶¶42-43).

Response: Franco's allegations fail to set forth a short, concise paragraph and contains numerous claimed allegations of fact in violation of Local Rule 56.1. The allegations represent legal arguments and are therefore not a statement of fact, as required by Local Rule 56.1.

41.   The functionality of the circular configured round towel is described in the specification of the '978 utility patent at column 1, lines 3 7-50, and at column 2, lines 45-49 as follows:

The invention is directed to a towel-bag apparatus which is adapted to move easily between an open position wherein a generally <u>circular fabric towel element provides a towel for drying purposes or to be laid on the beach for sunning purposes</u> and to a closed or partially closed position with the employment of a draw cord on the generally <u>circular</u> <u>towel element</u> to provide an enclosed bag, and further with the draw cord also providing a carrying strap for the bag. In particular, the towel bag apparatus of the invention employs the generally circular fabric towel element such as a terrycloth, having a reinforced peripheral web and a plurality of draw holes, such as of metal and plastic grommets, in the reinforced web.

(Complaint, attached Exhibit E, pages 34-47, col. 1, lines 37-50)(Exhibit 18, col. 1, lines *37-50). (Anders Dec. ¶[44])(emphasis added).

The drawings illustrate a towel-bag apparatus 10 of the invention which comprises a generally <u>circular terrycloth towel fabric</u> 12 having a diameter of 4 to 6 feet and a generally  reinforced fabric or canvas peripheral 1" to 11/2 webbing 14.

(Complaint, attached Exhibit E, pages 34-47, col. 2, lines 45-49 )(Exhibit 18, col. 2, lines *45-49) (Anders Dec. ¶[4])(emphasis added).

Response: Franco's allegations fail to set forth a short, concise paragraph and contains numerous claimed allegations of fact in violation of Local Rule 56.1. The allegations represent legal arguments and are therefore not a statement of fact, as required by Local Rule

56.1.

42.     The circular configuration of a round towel is claimed in claims 1,2, and 7 of the '978 utility patent as follows:

    1.     A towel-bag apparatus which is adapted to move between an open and closed position and which in the open position provides a towel suitable for drying and beach purposes, and in the closed position provides an enclosed bag with a carrying strap, and which towel-bag apparatus compromises in combination:

    a)  a generally <u>circular, fabric towel e1ement</u> having a reinforced peripheral web and a plurality of holes in the web and having a top surface and a bottom surface, the bottom surface having a generally centrally reinforced section;

    b)  a loop means generally centrally secured to the reinforced section;

    c) a ring means secured to the reinforced peripheral web; and

    c)  a draw cord means having a one and an other end, the draw cord passing

    d)  through the holes in the reinforced web of the towel element, so as to permit the <u>circular towel element</u> to move between an open position for towel or beach with the draw cord in a relaxed, extended position use and a closed position for bag use with the draw cord in a drawn position, the draw cord means including a clip-type closure means at the one end and the other end so as to permit the said clip-type enclosure means to engage the loop means or the ring in the closed position to form a carrying strap for the towel-bag apparatus.

    2.     The towel-bag apparatus of claim 1 wherein the generally <u>circular towel element</u> has a diameter of from four to six feet and wherein the <u>reinforced section is generally circular</u> and has a diameter from about six to eighteen inches.

7.     A towel-bag apparatus adapted to be placed in an open position which provides a towel suitable for beach or drying purposes and in the closed position provides an enclosed bag with a carrying strap, and which towel-bag apparatus compromises in combination:

    a)     a generally <u>circular. terrycloth towel element</u> having a diameter of about 4 to 6 feet and having a reinforced peripheral web edge and plurality of holes in the web and having a top surface and a bottom surface, the bottom surface having a generally <u>circular reinforced section</u> of a non-terrycloth-type material and having a cloth loop centrally secured to the reinforced section and a ring secured to the reinforced peripheral web; and

    b)     an elastic-type draw cord means having a one and the other end and passing through the holes in the web in an alternating fashion so as

> to permit the circular towel element to move between the open position for towel-beach use and a closed position for bag use, the draw cord means including a spring loaded clip at the one and the other end so as to permit the draw cord means to pass through the loop and the spring loaded clip to engage the ring in the closed position to form a carrying strap for the towel-bag apparatus in the closed position.

(Complaint, attached Exhibit E, pages 34-47, col. 3, lines 21-46; col. 4, line *5-7* and lines 21-45) (Exhibit 18, col. 3, lines 21-46; col. 4, line 5-7 and lines 21 -*45*)(Anders Dec. ¶45)(emphasis added).

Response: Franco's allegations fail to set forth a short, concise paragraph and contains numerous claimed allegations of fact in violation of Local Rule 56.1. The allegations represent legal arguments and are therefore not a statement of fact, as required by Local Rule 56.1.

43.    Figure 2 of the '978 utility patent illustrates the same circular configuration for a round towel which Franek registered as U.S. Trademark Registration No. 1,502,261. Shown below on the left is Franek's U.S. Trademark Registration No. 1,502,261 for a round beach towel and on the right is Figure 2 of the '978 utility patent:

Response: Franco's allegations fail to set forth a short, concise paragraph and contains numerous claimed allegations of fact in violation of Local Rule 56.1. The allegations represent legal arguments and are therefore not a statement of fact, as required by Local Rule 56.1.

44.    U. S. Utility Patent No. 3,660,861 ("the '861 utility patent") to Edward N. Delmonico entitled "Combination Round Towel and Holder" was filed on January 6, 1970 and was granted on May 9, 1972, (Exhibit 19). That is, the '861 Utility Patent entitled "Combination Round Towel and Holder" was granted approximately fourteen(14)

years before Franek filed its trademark Application for the Round Towel Mark in

commerce. (Complaint ¶7-8, attached Exhibits 14 and 19)(Anders Dec. ¶48).

Response: Admits.

*45.*    The '861 utility patent entitled "Combination Round Towel and Holder" discloses

and claims the same circular configuration of a round towel that Franek registered as a

trademark in U.S.Trademark Registration No. 1,502,261. (Complaint ¶1J7-8. attached

Exhibit H, page 78)(Exhibits14 and 19)(Anders Dec. ¶49).

Response: Franco's allegations fail to set forth a short, concise paragraph and contains

numerous claimed allegations of fact in violation of Local Rule 56.1. The allegations

represent legal arguments and are therefore not a statement of fact, as required by Local Rule

56.1.


46.    The <u>functionality</u> of the circular configured round towel is described in the

specification of the '861 utility patent entitled "Combination Round Towel and Holder" at

column 1, lines 44-47, and at column 2, lines 47-64 as follows:

> In accordance with the present invention, there is provided, in combination,
> a <u>towel circular in outline configuration</u> detachably anchored to a support adjacent
> the towel's geometric center.

(Exhibit 19, col. I, lines 44-47 )(Anders Dec. ¶50)(emphasis added).

Response: Franco's allegations fail to set forth a short, concise paragraph and contains

numerous claimed allegations of fact in violation of Local Rule 56.1. The allegations

represent legal arguments and are therefore not a statement of fact, as required by Local Rule

56.1.

47.    The circular configuration of a round towel is also claimed in claim 1 of the

'861 utility patent entitled "Combination Round Towel and Holder" as follows:


1. In combination:

a.    a hanger including a first portion for anchoring the same to a support and a
second portion detachably connectable to an article and including a conically
shaped member with an undulating outer surface, said undulatioris being
transverse to the longitudinal axis of said member, facilitating forming folds in
a sheet of material suspended therefrom; and

b.    a circular towel detachably connected to said second portion of said hanger.

(Exhibit 19, col. 3, lines 20-21; col. 4, lines I -20)(Anders Dec. ¶5l)(emphasis added).

Response: Franco's allegations fail to set forth a short, concise paragraph and contains

numerous claimed allegations of fact in violation of Local Rule 56.1. The allegations

represent legal arguments and are therefore not a statement of fact, as required by Local Rule

56.1.


48.    The '861 utility patent entitled "Combination Round Towel and Holder" explicitly

discloses the functional advantages of the circular configuration of the claimed circular

towel. As stated in the '861 utility patent:


...the towel 60 is circular in outline configuration as illustrated in FIG. 4 and because of this
shape the inner surface of the towel does not become exposed when the towel is suspended
from its geometric center. This permits having a towel which is decorative on one surface
only without detracting from the appearance when suspended from a hanger in a washroom.
The circular towel, accordingly, is a decorative item having a neat appearance. Further to
providing something which is pleasing in appearance, the circular towel has the advantage of
being able to be suspended from a minor area portion such that it can remain attached to
a hanger leaving the major portion of the towel area for use in drying hands. This is
diagrammatically illustrated in FIG. 3 wherein it will be readily apparent the area of towel
above a plane A--A in FIG. 3 is minor compared to the area below. It is the area below which
is usable when the towel is suspended from the hanger.

(Exhibit 19, cal. 1, lines [44-47]7)(Anders Dec. ¶52)(ernphasis added).

Response: Franco's allegations fail to set forth a short, concise paragraph and contains numerous claimed allegations of fact in violation of Local Rule 56.1. The allegations represent legal arguments and are therefore not a statement of fact, as required by Local Rule 56.1.

49.     U.S. Patent No. 2,803,845 ("the expired *'845* utility patent") entitled "Circular Towel" to Maijorie P. Bradford was filed on June 14, *1954,* was granted on August 27, 1957, and expired seventeen (17) years later on August 27, 1974, (Complaint, attached Exhibit E, pages 48-49)(Exhibit 15).

Response: Admit.

50. As described above in paragraphs 26 through 32, the expired '845 utility patent entitled "Circular Towel"discloses, claims, and shows the same circular configuration of a round towel that Franek later registered as a trademark in U.S. Trademark Registration No. 1,502,261. (Complaint ¶7-8, attached Exhibit E, pages 48-49 and Exhibit H, page 78)(Exhibits 14 and 15*).*

Response: Franco's allegations fail to set forth a short, concise paragraph and contains numerous claimed allegations of fact in violation of Local Rule 56.1. The allegations represent legal arguments and are therefore not a statement of fact, as required by Local Rule 56.1.

When the '845 utility patent entitled "Circular Towel" <u>expired</u> (seventeen (17) years after its issuance) on August 27, 1974, the patent monopoly over the circular towel that was claimed and which had been granted to the patentee of the *'845* utility patent by the U.S. Government, ended. Accordingly, when the '845 utility patent entitled "Circular Towel" <u>expired</u>, the

circular towel configuration claimed, disclosed, and shown in this patent went into the <u>public</u> <u>domain</u> and was free to be practiced by any member of the public, including Jay Franco. (Complaint, attached Exhibit F, pages 48-49)(Exhibit *15).*

Response: Franco's allegations fail to set forth a short, concise paragraph and contains numerous claimed allegations of fact in violation of Local Rule 56.1. The allegations represent legal arguments and are therefore not a statement of fact, as required by Local Rule 56.1.

*52.* Since the *'845* utility patent (entitled "Circular Towel") expired, and the circular towel configuration claimed, disclosed, and shown in this patent went into the public domain, many third party vendors have sold and continue to sell round or circular shaped beach towels without any interference or lawsuits for enforcement by Defendant Franek. (Complaint, attached Exhibit E, pages 48-49)(Exhibits 15 and 20).

Response: Franco's allegations fail to set forth a short, concise paragraph and contains numerous claimed allegations of fact in violation of Local Rule 56.1. The allegations represent legal arguments and are therefore not a statement of fact, as required by Local Rule 56.1.

53. On October 29, 1986, approximately twelve(12) years after the expiration of the *'845* utility patent entitled "Circular Towel," Franek sought federal trademark protection to register the same circular towel configuration as a trademark that had been previously patented as **functional** in the then expired *'845* utility patent to Bradford. That is, twelve (12)

years after the expiration of the '845 utility patent entitled "Circular Towel" which claimed, disclosed, and showed, the functional aspects of a circular towel configuration, Franek sought to register the same circular towel configuration as a trademark. (Complaint ¶7-8, attached Exhibit E, pages 48-49 and Exhibit H, page 78)(Exhibits 14 and *15).*

Response: Franco's allegations fail to set forth a short, concise paragraph and contains numerous claimed allegations of fact in violation of Local Rule 56.1. The allegations represent legal arguments and are therefore not a statement of fact, as required by Local Rule 56.1.

54.    Franek's own advertisements tout the same utilitarian and functional advantage of the circular configuration for the Round Towel Mark as that claimed and disclosed in the '029 utility patent to Lynne H. Tennant, et al. — permitting sunbathers to simply reposition their bodies on the round towel in order to get direct tanning exposure from the sun (as its position in the sky changes throughout the course of the day) without having to reposition the towel. (Complaint, attached Exhibit E, pages 40-47, col. 3, lines 5-9; attached Exhibit F, pages 60-78)(Exhibit 16, col.3, lines *5-9;* Exhibits 2 and 21 -25)(Anders Dec. ¶54)(emphasis added).

Response: Franco's allegations fail to set forth a short, concise paragraph and contains numerous claimed allegations of fact in violation of Local Rule 56.1. The allegations represent legal arguments and are therefore not a statement of fact, as required by Local Rule 56.1.

*55.* In 1986, when CLM filed the Application that later became U.S. Trademark

Registration No 1,502,261, it submitted a Woodward & Lothrop Department Stores'
advertisement for CLM's "Round-up new S{o}nspot beach towel" as a specimen
showing actual use of the Round Towel Mark in the marketplace. (Exhibits 1 and 2).

Response: Admits.

56. The Woodward & Lothrop Department Stores' advertisement for CLM's "Round-up
new S[o]nspot beach towel," states that the round shape of the "Sonspot" beach towel
<u>functionally</u> permits sunbathers to simply reposition their bodies on the round towel in order
to get direct tanning exposure from the sun (as its position in the sky changes throughout the
course of the day) without having to reposition the towel: "<u>Find your spot in the sun without
moving your towel around.</u>" (Exhibit 2)(Anders Dec. ¶55)(emphasis added).

Response: Denies, the advertisement does not contain the work "functionally".    Further
answering, the allegations represent legal arguments and are therefore not a statement of fact,
as required by Local Rule 56.1.

57.    CLM's Son International advertisement of the "Sonspot" round beach towel touts the
utility and functionality of the round shape of the round beach towel that CLM
registered as a trademark in U.S. Trademark Registration No 1,502,261. (Complaint
¶1J~-8, attached Exhibit H, page 78 and Exhibit F, page 60)(Exhibits 14 and
21)(Anders Dec. ¶56).

Response: The allegations represent legal arguments and are therefore not a statement of fact,
as required by Local Rule 56.1.

58.    CLM's Son International advertisement states that the round shape of the "Sonspot"
beach towel <u>functionally</u> overcomes the problem faced by beach goers using

conventional beach towels wherein they had to previously rotate their towel every few hours to get direct tanning exposure from the sun as the sun's position in the sky changed throughout the course of the day. With the "Sonspot" round beach towel, sunbathers could now simply reposition their bodies on the round towel as the round towel remains in a stationary, fixed position:

## NOW WHEN THE SUN MOVES, YOUR TOWEL DOESN'T HAVE TO

\* The round shape eliminates the need to constantly get up and move your towel as the sun moves across the sky. Instead merely reposition yourself

(Complaint, attached Exhibit F, page 60)(Exhibits 21)(Anders Dec. ¶57)(emphasis added).

Response: Franco's allegations fail to set forth a short, concise paragraph and contains numerous claimed allegations of fact in violation of Local Rule 56.1. The allegations represent legal arguments and are therefore not a statement of fact, as required by Local Rule 56.1.

59.   Springmaids ' s advertisement of CLM 's "Sonspot" round beach towel also touts the utility and functionality of the round shape of the round beach towel that Franek registered as a trademark in U.S. Trademark registration No. 1,502,261. (Complaint ¶7-8,attached Exhibit H, page 78 and Exhibit F, pages 61-63)(Exhibits 14 and 22)(Anders Dec. ¶58).

Response: Franco's allegations fail to set forth a short, concise paragraph and contains numerous claimed allegations of fact in violation of Local Rule 56.1. The allegations represent legal arguments and are therefore not a statement of fact, as required by Local Rule 56.1.

60.  Springmaid's advertisement of CLM's "Sonspot" round beach towel states that the round shape of the "Sonspot" beach towel <u>functionally</u> permits sunbathers to simply reposition their bodies on the round towel in order to get direct tanning exposure from the sun (as its position in the sky changes throughout the course of the day) without having to reposition the towel:

> Introducing SonspotTM from Springmaid, the great new beach towel line that's going to have everybody going around in circles! <u>These unique round towels stay put on the beach while sun-worshippers rotate to follow the sun.</u>
>
> The round shape of a towel is a trademark which identifies it as a quality product of Son International.

(Complaint, attached Exhibit F, pages 61 -63)(Exhibit 22)(Andcrs Dec. ¶59)(emphasis added).

Response: Franco's allegations fail to set forth a short, concise paragraph and contains numerous claimed allegations of fact in violation of Local Rule 56.1. The allegations represent legal arguments and are therefore not a statement of fact, as required by Local Rule 56.1.

61.  CLM's Son International "Huge Round Beach Towel" advertisements for the "Sonspot" round beach towel also tout the utility and functionality of the round shape of the round beach towel that CLM registered as a trademark in U.S. Trademark Registration No. 1,502,261. (Complaint ¶7-8, attached Exhibit H, page 78 and Exhibit F, pages 64-67)(Exhibits 14 and 23)(Anders Dec. ¶60).

Response: Franco's allegations fail to set forth a short, concise paragraph and contains numerous claimed allegations of fact in violation of Local Rule 56.1. The allegations represent legal arguments and are therefore not a statement of fact, as required by Local Rule

56.1.

62.     CLM 's Son International "Huge Round Beach Towel" advertisement for the "Sonspot" round beach towel states that the round shape of the "Sonspot" beach towel <u>functionally</u> permits sunbathers to simply reposition their bodies on the round towel in order to get direct tanning exposure from the sun (as its position in the sky changes throughout the course of the day) without having to reposition the towel:

> **Now when the sun moves, your towel doesn't have to.**
>
> One for lying, one *for* drying! Bound to be round! Don't be square! The <u>round shape</u> of the Sonspot® is a trademark of Son International.

(Complaint, attached Exhibit F, pages 64-67)Exhibit 23)(Anders Dee. ¶61)(emphasis added).

Response: Franco's allegations fail to set forth a short, concise paragraph and contains numerous claimed allegations of fact in violation of Local Rule 56.1. Response: Franco's allegations fail to set forth a short, concise paragraph and contains numerous claimed allegations of fact in violation of Local Rule 56.1. The allegations represent legal arguments and are therefore not a statement of fact, as required by Local Rule 56.1.

63.  In newspaper articles advertising CLM's Son International "Sonspot" round beach towel, CLM touted the utility and functionality of the round shape of the round beach towel that CLM registered as a trademark in U.S. Trademark Registration No. 1,502,261. (Complaint ¶117-8, attached Exhibit H, page 78 and Exhibit F, page 69)(Exhibits 14 and 22)(Anders Dec. ¶62).

Response: The statement is not authenticated by an appropriate affidavit or deposition and is therefore inadmissible. Further, the allegations represent legal arguments and are therefore not a statement of fact, as required by Local Rule 56.1.

64.    Newspaper articles advertising CLM's Son International "Sonspot" round beach towel state that the round shape of the "Sonspot" beach towel functionally permits sunbathers to simply reposition their bodies on the round towel in order to get direct tanning exposure from the sun (as its position in the sky changes throughout the course of the day) without having to reposition the towel:

> What's this? A Sonspot and no, it isn't a typo. It's the world's <u>first *round* beach towel</u>, designed by L.A.'s Son International, whipped up by Springmaid. <u>Why round? Aren't *you* tired of turning your towel to face the sun? Now you needn't</u>.

(Complaint, attached Exhibit F, page 69)(Exhibit 24)(Anders Dec. ¶63Xernphasis added).

Response: The statement is not authenticated by an appropriate affidavit or deposition and is therefore inadmissible in a motion for summary judgment. Further, the allegations represent legal arguments and are therefore not a statement of fact, as required by Local Rule 56.1.

65.    As the foregoing advertisements show, CLM always used the trademark "Sonspot" in conjunction with their Round Towel Mark. (Complaint, attached Exhibit F, pages 60-78)(Exhibits 2, *5,* and 2 1-24).

Response: Defendant admits to Exhibit 2 and 5. Exhibits 21-24 are not authenticated by an appropriate affidavit or deposition and are therefore inadmissible in a motion for summary judgment. Defendant therefore denies the statement as it relates to Exhibits 21-24.

66.    Mr. Woody Harrelson, one of the founder of Son International, admitted in printed articles that the round shape of the SONSPOT beach towel has utilitarian and

functional advantages.

(Complaint, attached Exhibit F, pages 68, 70-7l)(Exhibit *25).*

Response: The allegations represent legal arguments and are therefore not a statement of fact,

as required by Local Rule 56.1.

67.    As stated by Mr. Woody Harrelson, in various printed articles, the round

shape of the "Sonspot" beach towel permits sunbathers to simply reposition their bodies

on the round towel in order to get direct tanning exposure from the sun (as its position in

the sky changes throughout the course of the day) without having to reposition the towel:

> Son International was founded in 1985 and besides [Woody]Harrelson,  includes
> Clemens Franek, president of the firm, Robert Farrelly, vice president of sales, and
> Glen Grunwald, chief legal and financial advisor (who also was former captain of
> the Indians University 1981 national championship basketball team).
>
> Woody Harrelson... is the vice president in charge of publicity and marketing for
> Son International a beach accessories company based in Hermosa Beach,
> California. Son International introduced the first round beach towel, Sonspot, last
> summer and received
> an overwhelming response from consumers. Retail sales for the first year totaled
> over $1 million.  The purpose of a round beach towel is simple: "Now when the
> sun moves, your towel doesn't have to."

(Complaint, attached Exhibit F, pages 68 and 70-71 )(Exhibit [25])(emphasis added).


Woody Harrelson... is co-owner and a spokesperson for Son International This California
company manufactures giant — six feet in diameter — round beach towel. Why is round
better than square? Why is this company encouraging people to lie out in the sun and roast
themselves? We believe we are performing a public service by posing these questions.
Think about it. These towels cost between $40 and *$50.* We say get your fill of the beach
while sitting under a nice shade tree.

(Complaint, attached Exhibit F, pages 68 and [7]0-71)(Exhibit [2]S)(emphasis added).

Response: The statement is not authenticated by an appropriate affidavit or deposition and is

therefore inadmissible in a motion for summary judgment. Further, the allegations represent

legal arguments and are therefore not a statement of fact, as required by Local Rule 56.1.

68. Franek has himself admitted that the round shape of his round beach towel has utilitarian and functional  advantages. (Complaint, attached Exhibit G, pages 73-74)(Exhibit 26).

Response: The statement is not authenticated by an appropriate affidavit or deposition and is therefore inadmissible in a motion for summary judgment. Further, the allegations represent legal arguments and are therefore not a statement of fact, as required by Local Rule 56.1.

69.     On February 19,1989 Ms. Gloria L. Bowen visited Defendant Clemens Franek at CLM Design Inc. in Los Angeles, California. Ms. Bowen attested that at that time, Defendant Franek Stated:

…the old fashion way of getting up and moving and turning a rectangular towel was no longer necessary. With the <u>round</u> <u>towel</u>, as stated by Mr. Franek, a <u>person need only rotate the body without moving</u>

(Complaint, attached Exhibit G, pages 73-74)(Exhibit 26)(emphasis added).

Response: The statement is not authenticated by an appropriate affidavit or deposition in this case, and is therefore inadmissible in a motion for summary judgment.  Further, the allegations represent legal arguments and are therefore not a statement of fact, as required by Local Rule 56.1.

70,.     Franek's own admissions tout the same utilitarian and functional advantage of the circular configuration for the Round Towel Mark as that claimed and disclosed in the '029 utility patent to Lynne H. Tennant, et al, and in Franek's former company's various advertisements permitting sunbathers to simply reposition their

bodies on the round towel in order to get direct tanning exposure from the sun (as its position in the sky changes throughout the course of the day) without having to reposition the towel. (Complaint, attached Exhibit E, pages 40-47, col. 3, lines 5-9; attached Exhibit G, pages 73-74)(Exhibit 16, cal. 3, lines 5-9; Exhibit 26).

Response: The statement is not authenticated by an appropriate affidavit or deposition in this case, and is therefore inadmissible in a motion for summary judgment.  Further, the allegations represent legal arguments and are therefore not a statement of fact, as required by Local Rule 56.1.  Further, Denied, Answer at par

## **DEFENDANT'S STATEMENT OF MATERIAL FACTS**

1.  Defendant Franek is the owner of United States Trademark Registration No. 1,502,261.  The trademark relates to a beach towel in a round shape  ("Round Beach Towel Trademark").  Franek's Counterclaim ("Counterclaim") at par.1

2.  Franek conceived of the idea of marketing and selling a round beach towel in around 1985.  Franek's Declaration in support of his Memorandum of Law in Response to Franco's Motion for Partial Summary Judgment ("Declaration") at par. 5.

3.  The first use of the trademark was on August 15, 1985, and the first use of the mark in interstate commerce was on February 14, 1986.  Franco's Exhibit 14.

4.  The round beach towel trademark was originally in the name of CLM Design Inc. CLM used an assumed name of Son International.  Franco Exhibit 14, Declaration par. 5.

5.   Franek was the President of CLM Design.   CLM subsequently assigned the trademark to Franek.  Franco Exhibit 14, Declaration par. 6.

6.   CLM and Franek, individually and in conjunction with licensees, have used the mark continuously since the date of first use of the mark. Declaration at par.7.

7.   The USPTO has accepted the Trademark's Section 15 Declaration, and the trademark is incontestable.   Franco Exhibit 14.

8.   Exhibit 10 and Exhibit 23 to Franco's Motion, details some of the significant amount of money, resources and time devoted to advertising products incorporating the round beach towel up to that point in time. Franco Exhibits 10 and 23.

9.   CLM Design and Franek has expended resources have been expended time and money through the date of Franek's Declaration to market and sell round beach towels subject to the Round Beach Towel Trademark.  Declaration at par. 7.

10. Franek was the President of CLM Design. Franek has been involved in designing, marketing and selling beach towels and specifically round beach towels since 1985. Declaration at par. 8.

11. CLM Design adopted the round shape of the beach towel so the round towel's original, distinctive, and peculiar appearance would distinguish it from other beach towels and identify the beach towels as coming from a single source, namely Son International.  At the time Son International began selling round beach towels, the vast majority of existing beach towels were rectangular or square in shape. Rectangular and square beach towels had been used for decades prior to our introduction of the round beach towel.  Declaration at par. 8.

12. No one was selling round beach towels prior to Son International's introduction of the round beach towel. Declaration at par. 8.

13. The round beach towel is a design that is arbitrary, fanciful and ornamental. The design of the round beach towel is meant to be unique from a visual point of view in order to distinguish the round beach towel from all other shapes of beach towels. Declaration at par. 9.

14. Son International advertised the unique shape of its round towel in all of its advertisements.  Son International, in fact, advertised the round beach towel as "the most radical fashion item since the bikini." See e.g., Franco's Exhibit 6.

15. Son International also advertised the round beach towel through such advertisements as "Bound to be Round" and "Don't be Square."  Franco Exhibit 4.

16. Son International stated in an advertisement that "now when the sun moves, your towel doesn't have to."  That same advertisement emphasizes in large all capital letters "HUGE ROUND BEACH TOWEL" and states that the towel is a "LUXURIOUS ROUND BEACH TOWEEL – for LYING. NEARLY 6 FEET IN DIAMETER" The towel is touted in those ads as "The World's Greatest Beach Towel" Those advertisements then state in smaller type face as follows:  "Now when the sun moves, you don't have to."  The focus of Son's advertisement is on the large size and unique shape of the round beach towel.  In addition the advertisements showed a large, round beach towel made by Son International.  The round beach towel as stated in that advertisement was nearly 6 feet in diameter.  Franco Exhibit 23, Declaration at par. 11.

17. The ability to reposition a person's body on a beach towel is dictated by the surface area of a beach towel, as opposed to its shape. Declaration at par. 12.

18. The average person could just as easily reposition that person's body on a six-foot square beach towel as on a round towel. Declaration at par. 12.

19. The average person could just as easily reposition that person's body on a six-foot beach towels in shapes other than a round beach towel. Declaration at par. 12.

20. Beach towels now come in many configurations. There are as many alternatives for the design of beach towels as one could imagine. Declaration at par. 12-13.

21. Beach towels have traditionally been rectangular or square in shape. In addition, beach towels come in shapes, such as the shape of different animals, fish, flowers, dresses and surfboards. Declaration at par. 13.

22. The various configurations of beach towels are virtually endless. Each one of these towels, if provided the appropriate surface area, would allow a person to move about the towel without repositioning herself on the towel. Declaration at par. 13

23. The surface area of the towel, as opposed to the shape of the towel, would allow one to move their body on the towel as the sun moves across the sky. Declaration at par. 13.

24. The round beach towels sold by Son International and subsequently by licensees and Franek, is made using square towel stock. The towel material is cut in a circular pattern and hemmed. Declaration at par 14.

25. There are no inherent advantages from a cost perspective in making a round beach towel. In fact, removing the amount of material from the towel stock results in considerable waste. Declaration at par. 14.

26. Making a towel into a round shape does not result in any advantage in quality of the product. The round towel is made of cotton, like the vast majority of other beach towels of various shapes and sizes. Declaration at par. 14.

27. Franco's exhibits reference several other companies that are selling round beach towels in Franco Exhibit 20. The first advertisement is from a company named "REI." Franco Exhibit 20.  15.

28. Franek became aware that REI was selling round towels in February, 2008.  On February 21, 2008, my attorneys in this regard sent a cease and desist letter to REI based on its infringement of its trademark.  Declaration at par. 15.  .

29.  A round beach towel does not consume less physical space when the towel is folded up as opposed to towels of the same surface area. Declaration at par. 16.


Respectfully submitted,


/Mark Roth/
Attorney for Defendant

Orum & Roth LLC
53 West Jackson Blvd.
Suite 1616
Chicago, IL 60604
312.922.6262 x240