UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CLEMENS FRANEK,<br><br>    Plaintiff,<br><br>v.<br><br>WALMART STORES, INC. and<br>TARGET CORPORATION,<br><br>    Defendants. | Civil Action No. 08-Civ-0058<br><br>Judge Robert M. Dow, Jr.<br><br>*JURY DEMAND* |
| JAY FRANCO & SONS, INC.,<br><br>    Plaintiff,<br><br>v.<br><br>CLEMENS FRANEK,<br><br>    Defendant. | Civil Action No. 08-Civ-1313<br><br>Judge Robert M. Dow, Jr.<br><br>*JURY DEMAND* |

**DECLARATION OF ROBERT JOHN ANDERS IN SUPPORT OF JAY FRANCO &
SONS, INC.'S PARTIAL MOTION FOR SUMMARY JUDGMENT**

## I. INTRODUCTION

1) I, Robert John Anders have been retained as an Expert by Jay Franco & Sons, Inc. (hereinafter "Jay Franco") in connection with the above- captioned action. Attached as exhibits, are my Curriculum Vitae (Exhibit A), a list of publications that I have authored (Exhibit B), and a listing of all other cases in which I have been deposed for, or testified at, as an expert witness in the last four years (Exhibit C).

2) My time in this matter is billed at a rate of $388.00 per hour, of which I am being compensated at the rate of $275.00 per hour. The remaining $113.00 per hour is received by TASA (Technical Advisory Services for Attorneys), the organization that has referred cases to me since 1990 and handles my administrative and billing matters in cases they refer to me.

3) In formulating these opinions, I relied upon my extensive experience as an industrial designer, as well as my understanding of the practices associated with product design and development.

## II. BACKGROUND

4) I am a resident of Warwick, New York.

5) I retired in 2000 as a tenured full Professor of Industrial Design at Pratt Institute in Brooklyn, New York. Pratt Institute is one of the premiere colleges of Art, Design and Architecture in the United States. I had been a member of the faculty since 1988.

6) I majored in Industrial Design at Pratt Institute from 1950 to 1952. During the Korean War, I volunteered to serve in the United States Navy from 1952 to 1956. I served as an aerial photographer, deep-sea diver and scuba diver and was a member of the elite, Pacific Fleet Combat Camera Group. After four years of military service, I returned to Pratt Institute to complete my education and graduated in 1958 with a Bachelor of Industrial Design (BID)

degree. At graduation, I was awarded the Industrial Design Departments highest honor, the Dean's Medal.

7) I then spent thirty years in the industrial design profession in a variety of senior design management positions, both as head of my own consultancies as well as serving as a senior design executive at two major corporations, Bristol-Myers Company and Revlon, Inc.

8) During this thirty-year career in industrial design, I personally designed dozens of logotypes that were used to identify the origins of goods and services for agencies of the United States government, major and minor corporations and real estate developments. Currently, the most frequently seen trademark I personally designed was for Bristol-Myers, and is still being used by Bristol-Myers Squibb in all their print and television advertising. During my twelve year academic career, I also taught undergraduate industrial design students trademark design.

9) I am a member (#19785) of the Industrial Designers Society of America (IDSA), and the Human Factors and Ergonomics Society (HFES) #12595.

10) I also lectured and/or taught Design at the following institutions:
   a. University of Southwestern Louisiana, School of Architecture, Lafayette, Louisiana;
   b. Miami University, Miami, Ohio;
   c. University of Industrial Arts, Helsinki, Finland;
   d. University of Seville, Seville, Spain;
   e. North Carolina State University;
   f. Department of Interior Design, Pratt Institute;
   g. High School of Art & Design, Industrial Design Department, New York; and
   h. Cooper Hewitt Museum, New York.

11) Since 1990, I have served as an Expert Witness in 73 trademark and patent cases. Exhibit C provides additional information regarding this work, and lists the cases wherein I testified as an expert in industrial design over the past four years.

### III.    SCOPE AND STUDY OF OPINIONS

11) Jay Franco has sued Defendant Clemens Franek ("Franek") for a declaration by this Court that Jay Franco's use or sales of round beach towels does not infringe any valid trademarks or trade dress owned by Franek. Jay Franco further seeks an order by this Court cancelling Franek's U.S. Trademark Reg. No. 1,502,261 for a round beach towel ("Round Towel Mark").

12) I have been retained as an expert witness in this case to opine on whether Franek's U.S. Trademark Reg. No. 1,502,261 for a round beach towel is invalid and unenforceable:

> a) by reason that Franek's Round Towel Mark is functional and therefore, invalid and unenforceable because the round beach towel depicted in Franek's alleged trademark registration (U.S. Registration No. 1,502,261) is claimed, disclosed, and shown as functional in various active and expired utility patents, including U.S. Utility Patent Nos. 2,803,845 ("the '845 utility patent"); 3,660,861 ("the '861 utility patent"); 4,794,029 ("the '029 utility patent"); 4,991,978 ("the '978 utility patent"); and French Utility Patent No. 2,399,229 ("the '229 French Utility Patent"); and
>
> b) by reason that Franek's Round Towel Mark is functional and therefore, invalid and unenforceable because Franek's company, CLM Design, Inc. ("CLM"), (d/b/a Son International, Inc. or Sons, Inc.) used advertisements that tout the functionality of Franek's alleged Round Towel Mark.

13) On October 29, 1986, Defendant Franek's company, CLM, filed a Trademark Application for a "round or circular" configuration of a beach towel ("Round Towel Mark"). On August 30, 1988, the PTO registered CLM's Round Towel Mark as U.S. Trademark Registration 1,502,261. U.S. Trademark Registration No. 1,502,261 indicates that on July 2, 2007, a nunc pro tunc

4

assignment was recorded transferring the rights of said trademark registration from CLM to Defendant Franek. (See Exhibit D, Franek's U.S. Trademark Registration No. 1,502,261).

14) I have examined Franek's U.S. Trademark Registration No. 1,502,261 and its prosecution history.

15) I have also examined five (5) utility patents including U.S. Utility Patent Nos. 2,803,845 ("the '845 utility patent"); 3,660,861 ("the '861 utility patent"); 4,794,029 ("the '029 utility patent"); 4,991,978 ("the '978 utility patent"); and French Utility Patent No. 2,399,229 ("the '229 French Utility Patent") which claim, disclose, and show the same circular towel configuration depicted in Franek's U.S. Trademark Registration No.1,502,261.

16) I have further examined Franek's company, CLM Design, Inc.'s ("CLM"), (d/b/a Son International, Inc. or Sons, Inc.) advertisements for round towels purportedly covered by Franek's U.S. Trademark Registration No. 1,502,261.

### IV.   SUMMARY OF OPINIONS

17) As I will explain in detailed analysis, it is my opinion that Franek's U.S. Trademark Registration No. 1,502,261 is invalid and unenforceable under the doctrine of functionality because:

    a) the round beach towel depicted in Franek's alleged trademark registration (U.S. Registration No. 1,502,261) is claimed, disclosed, and shown as functional in various active and expired utility patents, including U.S. Utility Patent Nos. 2,803,845 ("the '845 utility patent"); 3,660,861 ("the '861 utility patent"); 4,794,029 ("the '029 utility patent"); 4,991,978 ("the '978 utility patent"); and French Utility Patent No. 2,399,229 ("the '229 French Utility Patent"); and

b) Franek's company, CLM Design, Inc. ("CLM") (d/b/a Son International, Inc. or Sons, Inc.), used advertisements that tout the functionality of Franek's alleged Round Towel Mark; and

c) in my opinion, as an expert of product design, the round shape of a beach towel for use by sunbathers to avoid changing the position of the towel on the beach, is clearly a functional product design, wherein the shape of the towel has been designed to serve a specific function and because it is the most efficient shape since it uses the least amount of area to accomplish the intended function; and

d) there is an additional reason as to why the round shape is functional. It is sufficient that the functional aspects of the round shape of Franek's beach towel simply be "useful" under the *TrafFix* case. In the case, a round towel is "useful" and functional because the round shape uses less space when it is folded up. Thus, the product design is "useful". See *TrafFix* at 33.

18) I reserve the right to modify and enlarge my opinions or the basis thereof based on any further discovery or testimony (including Defendant Franek's experts), or any other evidence.

## V.   THE DOCTRINE OF FUNCTIONALITY

19) My understanding of the doctrine of functionality and how it relates to trademark law is as follows.

20) It is my understanding that under the U.S. Supreme Court's seminal decision in *TrafFix Devices v. Mktg. Displays,* 532 U.S. 23, 26 (2001), if a registered trademark is determined to be functional, it is **not** given protection.

21) The Supreme Court has ruled that a trademark is functional "when it is essential to the use or purpose of the device or when it affects the cost or quality of the device." *TrafFix*, 532 U.S. at 33.

6

22) It is also my understanding that this Court has considered the following five factors to help determine whether a "product feature" (that is the subject of a trademark registration) is functional:

    a) the existence of a utility patent, expired or unexpired, that involves or describes the functionality of an item's design element;

    b) the utilitarian properties of the items' unpatented design elements;

    c) advertising of the item that touts the utilitarian advantages of the item's design elements;

    d) the dearth of, or difficulty in creating, alternative designs for the item's purpose; and

    e) the effect of the design feature on an item's quality or cost.

*See Specialized Seating, Inc. v. Greenwich Industries, L.P.*, 472 F.Supp.2d 999, 1011 (N.D. Ill. 2007).

22) I further understand that the existence of a utility patent creates a presumption that the claimed features in a trademark registration are functional. *See TrafFix*, 532 U.S. at 29. "It is proper to look to all aspects of a utility patent – the disclosure, the claims and the prosecution history – for evidence of the functionality of a shape." *TrafFix*, 532 U.S. at 32, 34.

23) Where a utility patent specifically <u>claims the product configuration in question,</u> "one who seeks to establish trade dress protection must carry the heavy burden of showing that the [trademark]... is not functional." *TrafFix*, 532 U.S. at 29-30.

7

## VI. UTILITY PATENTS DISCLOSE, CLAIM, AND ILLUSTRATE THE FUNCTIONAL ADVANTAGES OF THE ROUND OR CIRCULAR TOWEL CONFIGURATION DEPICTED IN FRANEK'S U.S. TRADEMARK REGISTRATION NO. 1,502,261.

### A. Expired U.S. Utility Patent No. 2,803,845 Entitled "Circular Towel"

24) U.S. Patent No. 2,803,845 ("the expired '845 utility patent") entitled "Circular Towel" to Marjorie P. Bradford was filed on June 14, 1954, was granted on August 27, 1957, and expired on August 27, 1974. (See Exhibit E, letters copy of the '845 patent).

25) The '845 expired utility patent entitled "Circular Towel" discloses, claims, and shows the same circular configuration of a round towel.

26) The specification of the expired '845 utility patent entitled "Circular Towel" states that:

> [A]n object of this invention is to provide a towel <u>which is constructed in circular form</u> and includes means for suspending the same from a towel rack.

Exhibit E, col. 1, lines 16-18 (emphasis added).

27) The expired '845 utility patent entitled "Circular Towel" does not claim or address a towel or fabric having a shape other than circular, nor is there any mention, suggestion, or teaching of using a towel having any shape other than circular. The '845 utility patent claims:

> In combination, a <u>towel</u> and suspension means therefore compromising, a <u>circular fabric body</u>, a reinforced disc for said <u>[circular fabric] body</u>, a pair of crossed straps positioned on said disc with the ends of said straps extending under the edge of said disc, stitching extending through said <u>[circular fabric] body</u>, said disc and said straps securing said <u>[circular fabric] body</u>, said disc and said straps together, with said disc disposed centrally of said <u>[circular fabric] body</u>, and adjustable elastic suspension member extending under said crossed straps for suspending said <u>[circular fabric] body</u>, and means joining the opposite ends of said elastic suspension members to form a closed loop.

Exhibit E, col. 2, lines 31-43 (emphasis added).

28) Figure 1 of the expired '845 utility patent entitled "Circular Towel" shows the same circular configuration as the round towel depicted in Franek's U.S. Trademark Registration No. 1,502,261.

8

29) The expired '845 utility patent entitled "Circular Towel" also explicitly discloses the <u>functional</u> advantages of the circular configuration of the claimed circular towel. As stated in the '845 utility patent:

> The <u>circular form of the towel body 10 provided a relatively large area of toweling for use by small children</u> and by suspending the body 10 with an elastic strap or band the <u>tapes 13 and 14 will not be placed under undue tearing strain if the [circular] towel is pulled laterally or downwardly</u> with respect to rack bar 16.

Exhibit E, col. 2, lines 22-27 (emphasis added).

30) Therefore, the round or circular towel configuration depicted in Franek's U.S. Trademark Registration No. 1,502,261 is presumptively functional, and thus, invalid and unenforceable.

### B.　U.S. Utility Patent No. 4,794,029 Entitled "Towel that Converts into a Bag"

31) U.S. Utility Patent No. 4,794,029 ("the '029 utility patent") to Lynne H. Tennant, et al. entitled "Towel that Converts into a Bag" was filed on February 24, 1987 and was granted on December 27, 1988. (See Exhibit F, letters copy of the '029 patent).

32) The '029 discloses, claims, and shows the same circular configuration of a round towel that Franek registered as a trademark in U.S. Trademark Registration No. 1,502,261.

33) The specification of the '029 utility patent discloses the <u>functionality</u> of the circular configuration of the towel:

> It is an object of this invention to provide a <u>circular section</u> of woven terry fabric that <u>when used as a towel for sunbathing requires no repositioning toward the changing angle of the sun</u>.

Exhibit F, col. 1, lines 1-8 (emphasis added).

> The <u>circular shape of the towel allows for the repositioning of the human body toward the changing angle of the sun while the towel remains stationary, thereby eliminating the need for continual repositioning of the towel</u> as with the conventional rectangular sunbather towel.

Exhibit F, col. 1, lines 58-63 (emphasis added).

34) Claim 2 of the '029 utility patent also claims the <u>functional</u> advantages of how the circular configuration of the towel cooperatively functions with the sun. Claim 2 of the '029 utility patent reads as follows:

> 2. A towel bag construction as set forth in claim 1 wherein said <u>towel is circular in shape, whereby a user while sunbathing may reposition his or her body towards the changing angle of the sun while the towel remains stationary.</u>

Exhibit F, col. 3, lines 5-9 (emphasis added).

35) Figure 1 of the '029 utility patent shows the same circular towel configuration as the round towel which Franek registered as a trademark in U.S. Trademark Registration No. 1,502,261.

36) Therefore, the round or circular towel configuration depicted in Franek's U.S. Trademark Registration No. 1,502,261 is presumptively functional, and thus, invalid and unenforceable.

### C. French Utility Patent No. 2,399,229

37) French Utility Patent No. 2,399,229 ("the '229 French Utility Patent") to Devalois, et al. was granted on April 6, 1979. (See Exhibit G, letters copy of the '229 French patent).

38) The '229 French utility patent discloses and shows the functional aspects of the same circular configuration of the round towel that Franek registered as a trademark in U.S. Trademark Registration No. 1,502,261.

39) The '229 French utility patent discloses the <u>functionality</u> of the circular configuration of the claimed round towel:

> The towel or cloth suspended from a hook is <u>designed to have the shortest possible hanging length, and is therefore preferably circular.</u>

See Exhibit G.

40) Figure 1 of the '229 French utility patent illustrates the same circular configuration for a round towel which Franek later registered as U.S. Trademark Registration No. 1,502,261.

41) Therefore, the round or circular towel configuration depicted in Franek's U.S. Trademark Registration No. 1,502,261 is presumptively functional, and thus, invalid and unenforceable.

### D. U.S. Utility Patent No. 4,991,978 Entitled "Towel Bag Combination Apparatus"

42) U.S. Utility Patent No. 4,991,978 ("the '978 utility patent") to Michael J. Ostrowski entitled "Towel Bag Combination Apparatus" was filed on January 16, 1990 and was granted on February 12, 1991. (See Exhibit H, letters copy of the '978 patent).

43) The '978 utility patent discloses, claims, and shows the same circular configuration of a round beach towel that Franek registered as the trademark in U.S. Trademark Registration No. 1,502,261.

44) The functionality of the circular configured round towel is described in the specification of the '978 utility patent at column 1, lines 37-50, and at column 2, lines 45-49 as follows:

> The invention is directed to a towel-bag apparatus which is adapted to move easily between an open position wherein a generally <u>circular fabric towel element provides a towel for drying purposes or to be laid on the beach for sunning purposes</u> and to a closed or partially closed position with the employment of a draw cord on the generally <u>circular towel element</u> to provide an enclosed bag, and further with the draw cord also providing a carrying strap for the bag. In particular, the towel bag apparatus of the invention employs the generally <u>circular fabric towel element</u>, such as a terrycloth, having a reinforced peripheral web and a plurality of draw holes, such as of metal and plastic grommets, in the reinforced web.

Exhibit H, col. 1, lines 37-50 (emphasis added).

> The drawings illustrate a towel-bag apparatus 10 of the invention which comprises a generally <u>circular terrycloth towel fabric</u> 12 having a diameter of 4 to 6 feet and a generally reinforced fabric or canvas peripheral 1" to 1 ½ webbing 14.

Exhibit H, col. 2, lines 45-49 (emphasis added).

45) The circular configuration of a round towel is claimed in claims 1, 2, and 7 of the '978 utility patent as follows:

> 1. A towel-bag apparatus which is adapted to move between an open and closed position and which in the open position provides a towel suitable for drying and beach purposes, and in the closed position provides an enclosed bag with a carrying strap, and which towel-bag apparatus compromises in combination:
>
> > a) a generally <u>circular, fabric towel element</u> having a reinforced peripheral web and a plurality of holes in the web and having a top surface and a

11

      bottom surface, the bottom surface having a generally centrally reinforced section;
b) a loop means generally centrally secured to the reinforced section;
c) a ring means secured to the reinforced peripheral web; and
d) a draw cord means having a one and an other end, the draw cord passing through the holes in the reinforced web of the towel element, so as to permit the <u>circular towel element</u> to move between an open position for towel or beach with the draw cord in a relaxed, extended position use and a closed position for bag use with the draw cord in a drawn position, the draw cord means including a clip-type closure means at the one end and the other end so as to permit the said clip-type enclosure means to engage the loop means or the ring in the closed position to form a carrying strap for the towel-bag apparatus.

2. The towel-bag apparatus of claim 1 wherein the generally <u>circular towel element</u> has a diameter of from four to six feet and wherein the <u>reinforced section is generally circular</u> and has a diameter from about six to eighteen inches.

7. A towel-bag apparatus adapted to be placed in an open position which provides a towel suitable for beach or drying purposes and in the closed position provides an enclosed bag with a carrying strap, and which towel-bag apparatus compromises in combination:

      a) a generally <u>circular, terrycloth towel element</u> having a diameter of about 4 to 6 feet and having a reinforced peripheral web edge and plurality of holes in the web and having a top surface and a bottom surface, the bottom surface having a generally <u>circular reinforced section</u> of a non-terrycloth-type material and having a cloth loop centrally secured to the reinforced section and a ring secured to the reinforced peripheral web; and
b) an elastic-type draw cord means having a one and the other end and passing through the holes in the web in an alternating fashion so as to permit the circular towel element to move between the open position for towel-beach use and a closed position for bag use, the draw cord means including a spring loaded clip at the one and the other end so as to permit the draw cord means to pass through the loop and the spring loaded clip to engage the ring in the closed position to form a carrying strap for the towel-bag apparatus in the closed position.

Exhibit H, col. 3, lines 21-46; col. 4, line 5-7 and lines 21-45 (emphasis added).

46) Figure 2 of the '978 utility patent illustrates the same circular configuration for a round towel which Franek registered as U.S. Trademark Registration No. 1,502,261.

47) Therefore, the round or circular towel configuration depicted in Franek's U.S. Trademark Registration No. 1,502,261 is presumptively functional, and thus, invalid and unenforceable.

12

### E.  U.S. Utility Patent No. 3,660,861 Entitled "Combination Round Towel and Holder"

48) U.S. Utility Patent No. 3,660,861 ("the '861 utility patent") to Edward N. Delmonico entitled "Combination Round Towel and Holder" was filed on January 6, 1970 and was granted on May 9, 1972. (See Exhibit I, letters copy of the '861 patent).

49) The '861 utility patent entitled "Combination Round Towel and Holder" discloses and claims the same circular configuration of a round towel that Franek registered as a trademark in U.S. Trademark Registration No. 1,502,261.

50) The <u>functionality</u> of the circular configured round towel is described in the specification of the '861 utility patent entitled "Combination Round Towel and Holder" at column 1, lines 44-47, and at column 2, lines 47-64 as follows:

> In accordance with the present invention, there is provided, in combination, a <u>towel substantially circular in outline configuration</u> detachably anchored to a support adjacent the towel's geometric center.

Exhibit I, col. 1, lines 44-47 (emphasis added).

51) The circular configuration of a round towel is also claimed in claim 1 of the '861 utility patent entitled "Combination Round Towel and Holder" as follows:

> 1. In combination:
>
> a. a hanger including a first portion for anchoring the same to a support and a second portion detachably connectable to an article and including a conically shaped member with an undulating outer surface, said undulations being transverse to the longitudinal axis of said member, facilitating forming folds in a sheet of material suspended therefrom; and
> b. a <u>circular towel</u> detachably connected to said second portion of said hanger.

Exhibit I, col. 3, lines 20-21; col. 4, lines 1-20 (emphasis added).

52) The '861 utility patent entitled "Combination Round Towel and Holder" explicitly discloses the <u>functional</u> advantages of the circular configuration of the claimed circular towel. As stated in the '861 utility patent:

13

> ... the <u>towel 60 is circular in outline configuration as illustrated in FIG. 4 and because of this shape the inner surface of the towel does not become exposed when the towel is suspended from its geometric center. This permits having a towel which is decorative on one surface only without detracting from the appearance when suspended from a hanger in a washroom.</u> The circular towel, accordingly, is a decorative item having a neat appearance. Further to providing something which is pleasing in appearance, <u>the circular towel has the advantage of being able to be suspended from a minor area portion such that it can remain attached to a hanger leaving the major portion of the towel area for use in drying hands.</u> This is diagrammatically illustrated in FIG. 3 wherein it will be readily apparent the area of towel above a plane A--A in FIG. 3 is minor compared to the area below. It is the area below which is usable when the towel is suspended from the hanger.

Exhibit I, col. 1, lines 44-47 (emphasis added).

53) Therefore, the round or circular towel configuration depicted in Franek's U.S. Trademark Registration No. 1,502,261 is presumptively functional, and thus, invalid and unenforceable.

## VII. FRANEK'S OWN ADVERTISEMENTS TOUT THE UTILITARIAN AND FUNCTIONAL ADVANTAGES OF THE ROUND TOWEL CONFIGURATION DEPICTED IN FRANEK'S U.S. TRADEMARK REGISTRATION NO. 1,502,261.

54) Franek's own advertisements tout the same utilitarian and functional advantage of the circular configuration for the Round Towel Mark as that claimed and disclosed in the '029 utility patent to Lynne H. Tennant, et al. – permitting sunbathers to simply reposition their bodies on the round towel in order to get direct tanning exposure from the sun (as its position in the sky changes throughout the course of the day) without having to reposition the towel.

55) A Woodward & Lothrop Department Stores' advertisement for CLM's "Round-up new S[o]nspot beach towel" touts the utility and functionality of the round shape of the round beach towel that CLM registered as a trademark in U.S. Trademark Registration No 1,502,261. It states that the round shape of the "Sonspot" beach towel <u>functionally</u> permits sunbathers to simply reposition their bodies on the round towel in order to get direct tanning exposure from the sun (as its position in the sky changes throughout the course of the day) without having to reposition the towel: "<u>Find your spot in the sun without moving your towel around.</u>" (See Exhibit J,

14

Woodward & Lothrop Department Stores' advertisement for CLM's "Round-up new S[o]nspot beach towel") (emphasis added).

56) CLM's Son International advertisement of the "Sonspot" round beach towel touts the utility and functionality of the round shape of the round beach towel that CLM registered as a trademark in U.S. Trademark Registration No 1,502,261. (See Exhibit K, CLM's Son International advertisement of the "Sonspot" round beach towel)

57) CLM's Son International advertisement state that the round shape of the "Sonspot" beach towel <u>functionally</u> overcomes the problem faced by beach goers using conventional beach towels wherein they had to previously rotate their towel every few hours to get direct tanning exposure from the sun as the sun's position in the sky changed throughout the course of the day. With the "Sonspot" round beach towel, sunbathers could now simply reposition their bodies on the round towel as the round towel remains in a stationary, fixed position:

<b><u>NOW WHEN THE SUN MOVES, YOUR TOWEL DOESN'T HAVE TO</u></b>

* The round shape eliminates the need to constantly get up and move your towel as the sun moves across the sky. Instead merely reposition yourself.

(See Exhibit K, CLM's Son International advertisement of the "Sonspot" round beach towel)(emphasis added).

58) Springmaid's advertisement of CLM's **SONSPOT** round beach towel also touts the utility and functionality of the round shape of the round beach towel that Franek registered as a trademark in U.S. Trademark registration No. 1,502,261. (See Exhibit L, Springmaid's advertisement of CLM's **SONSPOT** round beach towel)

59) Springmaid's advertisement of CLM's **SONSPOT** round beach towel states that the round shape of the **SONSPOT** beach towel <u>functionally</u> permits sunbathers to simply reposition their bodies on the round towel in order to get direct tanning exposure from the sun (as its position in the sky changes throughout the course of the day) without having to reposition the towel:

15

> Introducing Sonspot™ from Springmaid, the great new beach towel line that's going to have everybody going around in circles! <u>These unique round towels stay put on the beach while sun-worshippers rotate to follow the sun</u>.
>
> <u>The round shape of a towel is a trademark</u> which identifies it as a quality product of Son International.

(See Exhibit L, Springmaid's advertisement of CLM's **SONSPOT** round beach towel) (emphasis added).

60) CLM's Son International "Huge Round Beach Towel" advertisements for the **SONSPOT** round beach towel also tout the utility and functionality of the round shape of the round beach towel that CLM registered as a trademark in U.S. Trademark Registration No. 1,502,261. (See Exhibit M, CLM's Son International "Huge Round Beach Towel" advertisements for the **SONSPOT** round beach towel)

61) CLM's Son International "Huge Round Beach Towel" advertisement for the **SONSPOT** round beach towel states that the round shape of the **SONSPOT** beach towel <u>functionally</u> permits sunbathers to simply reposition their bodies on the round towel in order to get direct tanning exposure from the sun (as its position in the sky changes throughout the course of the day) without having to reposition the towel:

> **<u>Now when the sun moves, your towel doesn't have to.</u>**
>
> One for lying, one for drying! Bound to be round! Don't be square!
>
> The <u>round shape</u> of the Sonspot is a trademark of Son International.

(See Exhibit M, CLM's Son International "Huge Round Beach Towel" advertisements for the **SONSPOT** round beach towel) (emphasis added).

62) In newspaper articles advertising CLM's Son International **SONSPOT** round beach towel, CLM touted the utility and functionality of the round shape of the round beach towel that CLM registered as a trademark in U.S. Trademark Registration No. 1,502,261. (See Exhibit N, newspaper articles advertising CLM's Son International **SONSPOT** round beach towel)

16

63) Newspaper articles advertising CLM's Son International **SONSPOT** round beach towel state that the round shape of the **SONSPOT** beach towel <u>functionally</u> permits sunbathers to simply reposition their bodies on the round towel in order to get direct tanning exposure from the sun (as its position in the sky changes throughout the course of the day) without having to reposition the towel:

> What's this?  A Sonspot and no, it isn't a typo.  It's the world's first *round* <u>beach towel</u>, designed by L.A.'s Son International, whipped up by Springmaid.  <u>Why round?  Aren't *you* tired of turning your towel to face the sun?  Now you needn't.</u>

(See Exhibit N, newspaper articles advertising CLM's Son International **SONSPOT** round beach towel) (emphasis added).

64) Accordingly, Franek's own company's advertisements further prove that Franek's registered trademark is functional.  Thus, Franek's U.S. Trademark Registration No. 1,502,261 for the Round Towel Mark is invalid and unenforceable.

## VIII.  REMARKS

65) I currently hold the opinions expressed in this Declaration.  As my study of the case continues, I may acquire additional information and/or attain supplemental insights that result in added observations.  I reserve the right to supplement this Expert Report and to rely on additional documents and testimony that come to my attention between now and the time of the trial.  For example, I may supplement this Declaration to take into account the fact that the Defendants may produce documents relevant to my analyses.  Nevertheless, I believe that the information before me to date supports the opinions expressed in this document.  I also reserve the right to rely on all other declarations and expert reports submitted in this litigation.

66) Furthermore, I may also be called upon to provide expert analysis and opinions in rebuttal to any proofs brought forward by the Defendant in this litigation. To the extent additional information is provided, I intend to address it and, if appropriate, submit a rebuttal report.

67) During my testimony at trial, hearing or deposition, I expect to rely upon exhibits prepared to depict and explain the information contained in this Expert Report or as rebuttal to testimony by the Defendants' witnesses. Any such exhibits will be prepared and identified at the appropriate time.

68) I HEREBY DECLARE under penalty of perjury that all statements made herein of my own knowledge are true and that all statements made on information and belief are believed to be true; and further that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine and imprisonment, or both, under 18 U.S.C. §1001.

Respectfully submitted,

Dated: May 16, 2008

_____

Robert John Anders